**Teddy MEDWID, Plaintiff,**

**v.**

**James A. BAKER, III, Secretary, Department of the Treasury, Defendant.**

**No. 88 Civ. 4352 (RJW).**

United States District Court, S.D. New York.

Nov. 26, 1990.

Teddy Medwid, Staten Island, N.Y., pro se.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Steven M. Haber, of counsel), New York City, for defendant.

ROBERT J. WARD, District Judge.

Plaintiff Teddy Medwid ("Medwid") alleges that the Internal Revenue Service ("IRS") discriminated against him on account of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Defendant Secretary of the Department of the Treasury (the "Secretary") moves, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment. The Secretary argues that fifteen of plaintiff's twenty-one claims are time-barred, and as to the remainder of the claims, that plaintiff cannot establish that defendant engaged in age discrimination. Medwid cross-moves for summary judgment on the basis of the twenty-one claims contained in his complaint and supplemental affidavits.

By order dated March 30, 1990, the motions were referred to the Honorable James C. Francis IV, United States Magistrate, to hear and report pursuant to 28 U.S.C. § 636(b)(1) and Rule 4 of the Local Rules for Proceedings Before Magistrates. On July 18, 1990, Magistrate Francis filed a Report and Recommendation (the "Report") in which he recommended that the

Secretary's motion for summary judgment be granted with respect to nineteen of plaintiff's twenty-one claims and denied with respect to the remaining two claims. He further recommended that plaintiff's cross-motion for summary judgment be denied. Plaintiff and defendant filed objections to the Report. Having reviewed the Report and considered *de novo* all portions contained therein, the Court hereby modifies the magistrate's recommendation with respect to defendant's motion and adopts the magistrate's recommendation with respect to plaintiff's cross-motion. For the reasons that follow, defendant's motion for summary judgment is granted as to three of plaintiff's twenty-one claims, and denied as to the remainder, and plaintiff's cross-motion is denied.

## BACKGROUND

Medwid commenced his employment with the IRS as a Revenue Officer on September 12, 1960. In 1973, he was promoted to the position of Criminal Investigator in the IRS office of the Regional Inspector, Internal Security Division, North Atlantic Region. The rank of Criminal Investigator is presently referred to as Special Investigator, and Medwid has held that position at all times relevant to this action.

Medwid was between 48 and 52 years of age when the complained of events occurred. He became eligible for voluntary retirement on July 3, 1982, and if he had remained with the IRS, faced mandatory retirement at age 55 in 1987. Medwid was suspended on April 1, 1984 and "involuntarily" retired from service with the IRS on August 31, 1984.

A. *Allegations to Which a Time–Bar Defense is Raised*

The Secretary argues that a total of fifteen of Medwid's twenty-one claims are time-barred; thirteen because they were not made the subject of a timely adminis-

trative complaint and an additional two claims which he argues were merely the effects of an earlier untimely alleged act of discrimination. These claims allege, *inter alia*, that Medwid was removed from premium pay status, subjected to various forms of criticism from his superiors, retaliated against for testifying on behalf of another IRS inspector, received unsolicited retirement forms, was removed from surveillance details on two occasions in order to avoid paying him overtime and that one of his investigations was "killed" by management.[1]

B. *Allegations to Which an Attack on the Merits is Directed*

The Secretary argues with respect to the remaining six claims that Medwid cannot establish that defendant engaged in age discrimination.

The first of these incidents occurred on September 24, 1982, when Medwid was placed on a fourteen day suspension for the unauthorized possession of three documents authored by Branch Chief Charles Nagy. Medwid contends that these documents contained comments by Nagy which were "false ... written with malice ... and constituted a continuation of management's harassment" against him. Exhibit A to Declaration of Steven M. Haber filed December 18, 1989 (affidavit of Teddy Medwid) ("Medwid aff.") at 9. In addition, he asserts that in response to his request for records and information, management furnished a "sanitized" copy of the three documents at issue.

On November 18, 1982, Medwid was informed that his performance in a "critical element" of his position, case development, was unacceptable. Exhibit O to Declaration of Steven M. Haber filed December 18, 1989 (memorandum from William Rawley to Medwid) ("Rawley Memorandum"). He was placed on notice that he would be

---

1. The remainder of Medwid's claims which the Secretary contends are time-barred are that he was not assigned an investigation he had initiated; he was denied a request to extend annual leave; his weekly itinerary and overtime reports were subjected to in-depth review; he received an unsolicited brochure describing the work of the Federal Employee Counseling Service; he received a low rating for two categories on his performance appraisal worksheet; and he was informed that he was to initiate his own case investigations and was no longer being assigned new cases.

afforded sixty days to demonstrate acceptable performance with respect to this matter and that he would be evaluated during this period. At the end of the sixty days, Medwid was informed by letter that his case development skills had become acceptable, and that no further action would then be taken against him. Medwid was warned, however, that if his performance once again became unacceptable during a twelve month period commencing on November 18, 1982, he would be subject to either removal from the IRS or a reduction in grade.

The next incident Medwid cites as discriminatory is that he was subjected to counseling on February 18, 1983, by his supervisor regarding delay in the submission of a report. Medwid contends that this action was merely another harassment attempt, designed to discredit his reputation, and that the action was completely without foundation.

On May 23, 1983, Medwid filed an agency grievance in connection with a one thousand dollar sustained work performance award paid to IRS Inspector Robert Murphy for his work on a project. Medwid contends that the project would never have surfaced without his efforts, and that as a result of his contributions, the government stood to collect a significant sum in lost revenue. He claims that he should have received a "high quality increase" in connection with his work on the project. Medwid aff. at 14. On June 6, 1983, Medwid was informed that his complaint relating to the bonus had been denied because it was excluded from agency grievance procedures.

On December 8, 1983, Medwid was informed that he was being assigned to a thirty-day work detail in Buffalo, New York, to begin on January 9, 1984. Medwid asserts that this assignment constituted a continuation of harassment against him and reprisal for his invocation of the EEO process.

The final incident of which Medwid complains occurred on February 27, 1984, when Medwid was informed by letter of his reassignment to the Los Angeles office of the IRS, effective April 1, 1984. In connection with the move, Medwid's relocation expenses were to be paid, and his new position was to be identical to the position he held in New York. He was advised that failure to accede to this transfer could result in disciplinary action. Medwid refused to accept the new position, and was suspended on April 1, 1984. Notwithstanding the suspension, Medwid continued to report to work in New York on a daily basis until June 15, 1984, and he thereafter retired "involuntarily" on August 31, 1984. Exhibit C to Declaration of Steven M. Haber filed December 18, 1989 (deposition of Teddy Medwid) ("Medwid dep.") at 251.

### C. Administrative History

Medwid first sought counseling with regard to his age discrimination complaints on September 29, 1982. On that date, he contacted Equal Employment Opportunity ("EEO") counselor Lewis Rosenbluth. On September 23, 1983, the Equal Employment Opportunity Commission ("EEOC") gave Medwid notice of his final counseling interview, and informed him that he had fifteen days within which to file a complaint. On October 5, 1983, Medwid filed his formal complaint with the EEOC. He thereafter filed a second EEO complaint on February 29, 1984, alleging that the decision to transfer him to the Los Angeles office of the IRS constituted retaliation for his invocation of the EEOC process. The two complaints were consolidated, and proceeded together through the administrative process.

On June 12, 1987, the Department of the Treasury rendered a decision rejecting all of Medwid's claims relating to incidents that occurred prior to November 1, 1982, on the basis that Medwid had failed to seek EEO counseling on these matters in a timely fashion.[2] Medwid appealed the agency decision to the EEOC, which on March 4,

2. The agency rejected all claims occurring prior to thirty days before his "initial contact" date, which it recorded as November 30, 1982. The Secretary has conceded, for purposes of the present motion, that the date of Medwid's initial contact with an EEO counselor was on or about September 29, 1982.

1988 affirmed the decision. On May 6, 1988, the EEOC denied Medwid's request to reopen and reconsider its decision.

During the pendency of that appeal, the Regional Complaints Center of the Treasury Department, on September 30, 1987 issued a finding of "no discrimination" with respect to the portion of Medwid's complaint that it had not previously rejected as untimely. This determination was appealed by Medwid to the EEOC, and a hearing on the matter was scheduled for August 1, 1988. In the interim, on June 21, 1988, Medwid filed his *pro se* complaint in the instant action, incorporating the allegations contained in his EEOC complaint.

On August 1, 1988, an EEOC Administrative Law Judge returned Medwid's complaint and file to the IRS, with the recommendation that, pursuant to EEOC regulations, his administrative complaint be cancelled because Medwid had filed a civil action alleging issues identical to those in his EEO complaint. On October 25, 1988, the Department of the Treasury cancelled Medwid's complaint. Medwid appealed this decision and on February 2, 1989, the EEOC affirmed the agency determination, thus ending Medwid's arduous journey through the administrative process.

## DISCUSSION

■ A district judge must make a *de novo* determination of any portion of the Report and Recommendation of a magistrate to which specific written objection has been made. *See*, Rule 72(b), Fed.R.Civ.P., 28 U.S.C. § 636(b)(1).[3] The judge may then accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations. 28 U.S.C. § 636(b)(1). The statutory obligation of a district court to arrive at its own independent conclusion about those portions of a magistrate's report to which objection is made is not satisfied by a mere review of the report itself, however persuasive and well-documented. *Hernandez v. Estelle,*

711 F.2d 619, 620 (5th Cir.1983). The court must "exercise ... sound judicial discretion with respect to whether reliance should be placed on [the magistrate's] findings." *American Express Int'l Banking Corp. v. Sabet,* 512 F.Supp. 472, 473 (S.D.N.Y.1981), *aff'd without opinion,* 697 F.2d 287 (2d Cir.1982), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982). This Court's initial task, therefore, is to examine the standards which govern the disposition of the present motions.

### A. *Standard for Summary Judgment*

The standards for granting summary judgment in this Circuit are well-established. This extraordinary remedy should be granted only when, viewing the record in the light most favorable to the non-moving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. *Pension Benefit Guaranty Corp. v. LTV Corp.,* 875 F.2d 1008, 1015 (2d Cir.1989). Rule 56, Fed.R.Civ.P. "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). A "genuine" dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.*

■ Where the material fact at issue is an employer's intent, motivation or state of mind, summary judgment should be used sparingly. *Meiri v. Dacon,* 759 F.2d 989, 997–98 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less

---

**3.** This Court will construe plaintiff's "Response to Report and Recommendation" as objecting to all portions of the magistrate's disposition adverse to him. Defendant, in his "Application for Modification of Magistrate Francis' Report and Recommendation," objects explicitly to all portions of the Report adverse to him. Therefore, the Court will treat all portions of the Report as objected to.

to discrimination cases than to commercial or other areas of litigation." *Id.*, *citing Nash v. Jacqueline Cochran, Inc.*, 548 F.Supp. 676, 678 (S.D.N.Y.1982). Additionally,

> the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily rendered all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ As noted above, both parties have moved for summary judgment. Cross-motions for summary judgment, however, do not warrant the granting of summary judgment unless the court finds that "one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Frouge Corp. v. Chase Manhattan Bank*, 426 F.Supp. 794, 796 (S.D.N.Y.1976). *See also, Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 716 (2d Cir.1985).

### B. *The Administrative Time Limit*

■ The Secretary argues that the majority of Medwid's claims are time-barred because they occurred more than thirty days prior to his initial contact with an EEO counselor. The EEOC regulation relied upon by the Secretary requires a federal employee seeking relief for alleged employment discrimination to bring the incident to the attention of an EEO counselor within thirty days of its occurence. 29 C.F.R. § 1613.214(a)(1)(i). The Secretary asserts that Medwid cannot press claims in this lawsuit which failed to comply with this administrative time limit. Therefore, the Secretary contends that summary judgment is mandated in his favor with respect to thirteen claims occurring prior to August 29, 1982, and the two claims which he argues were merely the effect of his time-barred claim for removal from premium pay status.[4]

■ The ADEA does not require that aggrieved federal employees initiate an EEO complaint prior to commencing an action in federal court. Unlike the Civil Rights Act, which generally requires a government employee to initiate and exhaust all administrative remedies before he may file a civil action, (*see* 42 U.S.C. § 2000e–16(c)), the ADEA provides two avenues of relief to federal employees believing themselves the victims of age discrimination. First, they may file an administrative complaint with the EEOC pursuant to the rules and regulations regarding the acceptance and processing of complaints which the EEOC is authorized to issue under the ADEA. 29 U.S.C. § 633a(b). Alternatively, they may forego administrative action before the EEOC and bring an action in any federal district court of competent jurisdiction. 29 U.S.C. § 633a(c). Federal employees who choose to take their ADEA claims directly to court must give the EEOC thirty days' notice of intent to sue within 180 days after the alleged unlawful practice occurred. 29 U.S.C. § 633a(d). This requirement does not apply to those employees who have first filed an administrative complaint with the EEOC. *Id.*

In the present case, plaintiff initially elected to pursue his administrative remedy by contacting an EEO counselor and subsequently lodging a formal complaint with the EEOC. Regulations promulgated by the EEOC govern these proceedings. However, compliance with the thirty-day EEOC limitations period would not have been mandated had Medwid chosen to forego the agency avenue of relief and proceed-

---

4. Two of Medwid's claims relate to his being removed from surveillance duties. The Secretary argues, and Medwid conceded during his deposition, that Medwid would not have been relieved from surveillance duties had he not been removed from premium pay status prior to August 29, 1982.

ed directly to court. The issue in the instant case is whether plaintiff should be bound by the administrative time limit because he proceeded administratively prior to accessing the federal courts.

 Resolution of this issue depends upon whether the ADEA requires an aggrieved federal employee to exhaust his administrative remedies. Compliance with the thirty-day limitation period embodied in 29 C.F.R. § 1613.214(a)(1) is an exhaustion of administrative remedies requirement. *See Knowles v. Postmaster General, U.S. Postal Service,* 656 F.Supp. 593, 597 (D.Conn.1987) (failure to file timely EEO complaint requires dismissal for failure to exhaust administrative remedies); *Royce v. Postal Service,* 48 Fair Empl.Cas. 963, 964, 1988 WL 131654 (W.D.N.Y.1988) (exhaustion requires that a complainant contact the EEOC within 30 days of the date of the alleged discriminatory act); *Tillett v. Carlin,* 637 F.Supp. 251, 254 (D.Conn.1986) (in order to exhaust one's administrative remedies and gain access to federal court, satisfaction of EEOC time limitations are required); *Bumpus v. Postmaster General, U.S. Postal Service,* No. 86 Civ. 1166 (RWS), 1987 WL 34255, 1987 U.S. Dist. LEXIS 12036 (S.D.N.Y.1987).

The circuits are split on the question of whether a federal employee who initiates administrative remedies under the ADEA must exhaust these remedies prior to bringing an age discrimination action in court. Most courts of appeals hold that a claimant must allow the administrative proceeding to be completed before bringing a court action. *See, e.g., Rivera v. United States Postal Service,* 830 F.2d 1037 (9th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988); *Castro v. United States,* 775 F.2d 399, 404 (1st Cir.1985); *Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir.1981), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983). The Sixth Circuit in *Langford v. U.S. Army Corps of Engineers,* 839 F.2d 1192, 1194–95 (6th Cir.1988), held to the contrary, reasoning that since an ADEA

claimant is allowed to sue without ever initiating an administrative proceeding, he may also bring a court action before the administrative process has concluded. *See also Coleman v. Nolan,* 693 F.Supp. 1544, 1547 (S.D.N.Y.1988).

The Second Circuit recently expressed its view on the exhaustion requirement issue in *Bornholdt v. Brady,* 869 F.2d 57 (2d Cir.1989). The Court noted that the current EEOC regulations dealing with age discrimination claims reflect the *Langford* view on exhaustion by providing that the "filing of a civil action ... terminates [agency] processing" of the matter. 29 C.F.R. § 1613.513.[5] The Court further noted that this regulation applies only to court actions filed after the effective date of November 30, 1987. It then stated that "[t]he *Langford* view that exhaustion is not required even if the ADEA claimant has initiated administrative proceedings is undoubtedly correct for suits commenced after November 30, 1987." 869 F.2d at 63. The Second Circuit expressed the view that a judicial forum is available to an ADEA plaintiff who has failed to exhaust, reasoning that if exhaustion were mandated, "[t]he claimant who pursue[d] both avenues would find both automatically closed." *Id.*

Plaintiff in the instant action was not required to exhaust his administrative remedies, since he commenced this suit on June 21, 1988. Plaintiff's failure to comply with the thirty-day EEOC time limitation therefore is no bar to his bringing his discrimination claims before this Court. Moreover, it would be anomalous to give a claimant access to a judicial forum at any point in his administrative proceedings by not mandating exhaustion, while at the same time barring the action because of a failure to comply with a time limitation embodied in an administrative regulation.

#### C. The Applicable Statute of Limitations

 Because the administrative time limit does not apply to plaintiff's claims in this lawsuit, the Court must now determine

---

**5.** The Department of the Treasury, as already noted, cancelled Medwid's EEOC complaint

based upon this regulation. The EEOC affirmed this decision.

what limitations period to apply in deciding whether Medwid's discrimination claims are timely under the ADEA.

Section 633a of the ADEA proscribes age-based employment discrimination by federal government agencies and provides that federal employees may choose to pursue their remedies either through the administrative process or through the courts. Section 633a does not, however, provide the applicable limitations period within which a federal employee must file an age discrimination claim in federal court when the employee has first filed a complaint with the EEOC.

When a statute creating a right of action does not specify a limitations period, it is not ordinarily assumed that Congress intended that there be no time limit at all on the action. *Del Costello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Rather, "our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source." *Id.*

The two most logical candidates for borrowing would appear to be either the thirty-day limitations period of 42 U.S.C. § 2000e–16(c), applicable to Title VII discrimination claims against the federal government, or the two or three year periods governing ADEA actions against private employers, codified at 29 U.S.C. § 626(e)(1) (incorporating by reference 29 U.S.C. § 255). *Compare Strazdas v. Baker,* 689 F.Supp. 310, 311–12 (S.D.N.Y.1988) (applying thirty-day Title VII period), *Caraway v. Postmaster General of the United States,* 678 F.Supp. 125, 128 (D.Md.1988) (thirty-day limitation period provided in Title VII is applicable to ADEA claims) *with Wiersema v. Tennessee Valley Authority,* 648 F.Supp. 66, 68 (E.D.Tenn.1986) (two and three year statutes of limitations under § 626(e) apply to ADEA actions by federal employees).

The Second Circuit rejected both of these sources in *Bornholdt v. Brady, supra,* 869 F.2d at 64–67, after conducting an exhaustive and careful analysis of the limitations question. After a review of the relevant legislative history, the Court concluded that "[C]ongress deliberately chose not to make the ADEA limitations period for suits against the government the same as the thirty-day period of limitation provided for analogous suits under Title VII, 42 U.S.C. § 2000e–16(c)." 869 F.2d at 65. EEOC regulations also support this conclusion in that they do not require federal employee ADEA claims to be brought within thirty days. In fact, the EEOC regulation requiring Title VII claims to be filed within thirty days, 29 C.F.R. § 1613.281, is expressly made inapplicable to federal employee ADEA claims. *See* 29 C.F.R. § 1613.514.

The Court in *Bornholdt* also found that it would be improper to borrow the two and three year periods incorporated into other provisions of the ADEA, because § 633a is a self-contained section that expressly forbids the incorporation of any other ADEA provision.[6] 869 F.2d at 65. The Court concluded that "it seems plain that Congress intended us not to look to [those portions of the ADEA that apply to private employers] and borrow, for suits against the government, the ADEA limitations period found there." *Id.*

In light of *Bornholdt,* this Court will not apply either the Title VII thirty-day period or the two or three year "private" ADEA period to this action. In determining what limitations period governs this case, the Court must now decide whether to apply the federal catch-all six-year statute of limitations for nontort civil actions against the government, 28 U.S.C. § 2401(a), or borrow a provision from another statute. In *Bornholdt,* the Second Circuit expressed skepticism regarding the usefulness of the borrowing technique in actions against the federal government:

The Supreme Court has used the borrowing device principally with respect to federal statutory causes of actions brought

---

**6.** Section 633a provides that: "Any personnel action of any department, agency, or other entity referred to in [this section] shall not be subject to, or affected by, any provision of [the ADEA], other than the provisions of section 631(b) of this title and the provisions of this section." 29 U.S.C. § 633a(f).

against private entities, not against the government. With respect to private defendants, borrowing is often necessary because as to them, there is no general federal statute of limitations. There is, however, a general six year statute of limitations governing nontort civil actions against the federal government. *See* 28 U.S.C. § 2401(a) (1982); *Blassingame v. Secretary of the Navy*, 811 F.2d 65, 70 (2d Cir.1987). Thus, the most fundamental reason for borrowing a statute of limitations does not seem applicable to a suit against the federal government.

869 F.2d at 64.

Following the Second Circuit's reasoning in *Bornholdt*, the Court will refrain from borrowing and apply the six year period of 28 U.S.C. § 2401(a) to this action. *See also Lubniewski v. Lehman*, 891 F.2d 216, 221 (9th Cir.1989) (applying general federal statute of limitation in federal employee ADEA action). Accordingly, the Court must now determine whether any of plaintiff's claims are time-barred because they were not made the subject of a civil action within six years after they accrued.

■ Medwid's first claim accrued on or about September 9, 1980. Approximately two years later, on September 29, 1982, Medwid initiated an administrative proceeding. He exhausted his administrative remedy with respect to those claims which the agency found were time-barred on May 6, 1988, when the EEOC denied his request to reopen and reconsider its decision. With regard to the remainder of his claims, his administrative remedies were closed to him by the agency when he filed his complaint in the instant action on June 21, 1988.

7. Though not necessary to the resolution of this matter, the Court's belief is that the statute is tolled until administrative action is final or suit is instituted. To find otherwise would potentially deprive plaintiffs of judicial review after protracted administrative proceedings and thus defeat the purpose of section 2401(a). *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 522, 87 S.Ct. 1177, 1187, 18 L.Ed.2d 256 (1967).

8. Unlike a Congressionally mandated limitations period for claims against the government, a borrowed statute is not a limitation that affects a court's jurisdiction. *Bornholdt v. Brady,*

■ Accrual is suspended by administrative proceedings so long as an action brought prior to exhaustion would be subject to dismissal on that basis. *Donnelly v. United States*, 850 F.2d 1313, 1319 (9th Cir.1988) *cert. denied sub nom. Donnelly v. Eklutna*, 488 U.S. 1046, 109 S.Ct. 878, 102 L.Ed.2d 1001 (1989). Exhaustion of administrative remedies was required within the Second Circuit until November 30, 1987. *Bornholdt v. Brady, supra,* 869 F.2d at 63. Consequently, the statute was tolled during the administrative proceedings at least until that date, since any action instituted prior to November 30, 1987 would have been subject to dismissal for failure to exhaust administrative remedies.

■ Assuming that the limitations period began to run anew on December 1, 1988,[7] Medwid filed this action less than seven months later. The statute thus ran for a total of approximately 2 years, 7 months with respect to Medwid's earliest claim. Therefore, all of Medwid's claims were brought within the six year limitations period. Accordingly, the Court rejects the Magistrate's recommendation and denies the Secretary's motion for summary judgment with respect to the fifteen claims that he contended were time-barred.[8]

### D. The Remaining Claims

The Secretary argues that Medwid cannot establish a case of age discrimination with respect to his claims regarding internal counseling, sixty-day monitoring, Buffalo work detail assignment, Los Angeles transfer, one thousand dollar bonus and fourteen-day suspension.

*supra,* 869 F.2d at 67. The Court recognizes the difficulties that would be raised by attempting to determine whether there may be an estoppel against the government in this case. *See Long Island Radio Co. v. NLRB,* 841 F.2d 474, 478 (2d Cir.1988); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 *reh'g denied,* 451 U.S. 1032, 101 S.Ct. 3023, 69 L.Ed.2d 401 (1981). However, the Court notes that the IRS took no action with regard to Medwid's complaint for a period of over three years, in derogation of 29 C.F.R. § 1613.220, which mandates that the agency resolve a complaint within 180 days.

The ADEA protects federal employees who are at least forty years of age and provides that it is unlawful for an employer to:

[d]ischarge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]

limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

29 U.S.C. §§ 623(a)(1) and (2). The statute expressly provides that it is not unlawful for an employer to base an otherwise prohibited employment decision on "reasonable factors other than age," or to discharge or otherwise discipline an individual for "good cause." 29 U.S.C. § 623(f).

■■■■ A plaintiff in an ADEA action has the burden of proving that "age was a factor that made a difference" in the employment decision to which he objects. *Lowe v. Commack Union Free School District*, 886 F.2d 1364, 1375 (2d Cir.1989). It need not be the principal factor. *Id.* The evidentiary framework measuring discrimination under the ADEA borrows from Title VII case law. *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir. 1990). Thus, the three-step burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) governs. Under this framework, a plaintiff:

[f]irst has the burden of proving by the preponderance of evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legit-

imate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093. The failure of either party to meet its burden at any step of the analysis is dispositive of the action. *Meschino v. ITT Corp.*, 563 F.Supp. 1066, 1069 (S.D.N.Y. 1983).

■■■ A prima facie case of age discrimination requires that a plaintiff adduce sufficient evidence to support a finding that (1) he is in the protected age group; (2) he was qualified for the job; (3) he was discharged or was adversely affected by the employment decision; and (4) the discharge or act complained of occurred under circumstances giving rise to an inference of age discrimination. *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324 (2d Cir.1983), *Arnell v. Pan American World Airways, Inc.*, 611 F.Supp. 908, 909 (S.D.N.Y.1985).

### 1. Internal Counseling, Sixty–Day Monitoring, Buffalo Detail and Los Angeles Transfer

The Secretary argues that Medwid has failed to establish a prima facie case with respect to the claims that relate to internal counseling, sixty-day monitoring, the Buffalo work detail assignment and the Los Angeles transfer, because he has not fulfilled the third prong, that is, he has failed to demonstrate that he was adversely affected by these actions.

■■■ In order to meet the third prong required to establish a prima facie case with regard to these claims, Medwid must demonstrate that he "suffered a *materially adverse* change in the terms or conditions of [his] employment because of [his] employer's discriminatory conduct." *Spring v. Sheboygan Area School District*, 865 F.2d 883, 885 (7th Cir.1989) (emphasis in original); *see also Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309, 313 (6th Cir.1989) (prima facie case requires proof of adverse employment action), *accord, Arnell v. Pan American World Airways, Inc., supra,* 611 F.Supp. at 909. An adverse employment decision

has been defined as a decision which "has an attendant negative result, a deprivation of a position or an opportunity." *Haimovitz v. United States Dept. of Justice*, 720 F.Supp. 516, 526 (W.D.Pa.1989) *aff'd* 902 F.2d 1560 (3d Cir.1990).

■ Medwid claims that on February 18, 1983, he was subjected to counseling by his supervisor regarding delay in the submission of a report. Medwid, however, has failed to demonstrate that he was adversely affected in any way by this act. Since there is no evidence in the record suggesting that the counseling adversely impacted upon the terms and conditions of Medwid's employment, summary judgment is appropriate because Medwid has not established a prima facie case. The Court therefore adopts the Magistrate's recommendation and grants the Secretary's motion with respect to this claim.

■ With regard to his sixty-day monitoring claim, Medwid asserts that on November 18, 1982, he was placed on notice that for sixty days his work efforts in the area of case development would be closely monitored and that failure to develop cases would lead to "punitive" action. Medwid aff. at 12. The Secretary contends that at the end of the sixty-day period, plaintiff was informed that his case development skills were considered acceptable and that no action would be taken against him. Rawley Memorandum. Thus, the Secretary argues that there was no adverse effect on Medwid's employment. Placement of Medwid on the sixty-day monitoring status was, however, itself an adverse action independent of any potential ramifications of the act which could have followed.

The Rawley Memorandum relied upon by defendant, states that on November 18, 1982 Medwid was informed that his performance in the "critical element" of case development was "unacceptable." This type of evaluation by a superior is harmful to an employee. Moreover, the memorandum notes that as a result of his now acceptable performance, no *further* action would be taken, indicating that the placement of Medwid on sixty-day status was itself an adverse action. Medwid was also informed that should his performance once again become unacceptable during the next year, it could result in removal from the IRS or a reduction in grade. There is certainly a question as to whether this year-long "probation" period was a direct result of Medwid's first being sanctioned with placement on sixty-day status.

■ Medwid has demonstrated that he was adversely affected by this employment decision. At trial, the remaining question to be resolved in order to establish a prima facie case is whether the imposition of the sixty-day monitoring occurred under circumstances that give rise to an inference of age discrimination. Therefore, the Court rejects the Magistrate's recommendation regarding Medwid's sixty-day monitoring claim and holds that summary judgment with respect to this claim is inappropriate.

■ Next, the Secretary argues that Medwid has failed to demonstrate any adverse effect of his assignment to the Buffalo, New York work detail and transfer to Los Angeles and that neither of these actions amounted to a constructive discharge.[9]

On December 8, 1983, Medwid was assigned to a thirty-day work detail to begin in Buffalo, New York on January 9, 1984. Medwid makes several allegations with respect to this assignment. First, he argues that the detail posed an undue hardship upon his family because of his single parent status and that a lower grade inspector would have been more appropriate for the assignment. Next, Medwid alleges that

**9.** Plaintiff has also asserted that the agency's actions with respect to these claims was reprisal for Medwid's invocation of the EEOC process. Since a plaintiff alleging reprisal must establish adverse employment action, *see Hollander v. American Cyanamid Co., supra,* 895 F.2d at 85, the Court's analysis with respect to this claim is the same as for a claim of direct age discrimination, that is, it must determine whether genuine issues of material fact exist as to the adverse nature of these actions.

138

during the Buffalo detail he was not assigned cases, he did not conduct investigations at his grade level and he prepared no reports for investigation. Finally, he asserts that during his absence an assault investigation completed by him was presented to a grand jury by a less experienced inspector.

The Secretary maintains that the IRS Inspection Office in New York City assigned Medwid to this detail in upstate New York in response to that region's request for assistance with an ongoing investigation of the murder of an IRS agent and subsequent threats made against IRS personnel. However, the Secretary offers no evidence in response to plaintiff's contention that he performed little or no work relating to this investigation while on the Buffalo detail. Moreover, the fact that Medwid was on leave when informed of the detail and would not be available to report for at least another month, undermines the Secretary's claim that the IRS needed an agent to conduct the murder and threats investigation.

Furthermore, the fact that the IRS arranged for air and ground transportation for Medwid during the detail period does not disprove Medwid's claim that the action was adverse. The circumstances surrounding the Buffalo detail, and the diminution in work assignments during the period Medwid spent in Buffalo, indicate to this Court that questions exist as to whether the assignment had an "attendant negative result, a deprivation of a position or an opportunity." *Haimovitz v. U.S. Dept. of Justice, supra,* 720 F.Supp. at 526. The Court agrees with the Magistrate's finding that there are genuine issues of material fact outstanding with respect to whether these incidents amounted to adverse employment actions. The Court therefore adopts the Magistrate's recommendation

that summary judgment for the Secretary on these claims be denied.

On February 27, 1984, Medwid was informed by letter of his reassignment to the Los Angeles office of the IRS, effective April 1, 1984. At that time, Medwid was advised that his relocation expenses were to be paid and that his new position would be identical to the position he held in New York. He was further informed that his failure to accede to this reassignment could result in disciplinary action, up to and including removal from the IRS. Medwid did not request this transfer nor was it discussed with him at any time prior to his receipt of the letter. Medwid refused to accept the new position, and continued to report to work in New York on a daily basis between April 1 and June 15, 1984. As a consequence, he was suspended, and he thereafter retired "involuntarily." Medwid dep. at 251.

Medwid's claim regarding the Los Angeles transfer could be read as either a claim that the reassignment was a constructive discharge or an adverse employment decision. The Secretary argues that Medwid cannot demonstrate that the transfer had an adverse impact on him, since the positions were in all material respects identical. Further, he argues that the transfer cannot satisfy the standard set forth in this Circuit for a constructive discharge.

The Court agrees with the Magistrate's conclusion that a transfer to a distant region after twenty-four years of service with the same agency in the same locale on one month's notice could be a "materially adverse" job action.[10] A reasonable trier of fact might well find from the evidence in the record as a whole that this action adversely impacted the plaintiff. *See Russo v. Trifari, Krussman & Fishel, Inc.,* 837 F.2d 40, 43 (2d Cir.1988) (material issue of fact over whether "transfer or terminate" order was a ruse to "get rid of" older

**10.** The decisions relied upon by the Secretary to the effect that, as a matter of law, a transfer of this kind cannot constitute an adverse employment decision are inapposite. The cases involve "reduction in force" situations, in which discharge and/or transfer is a necessary consequence of the reduction. There is thus a lessened likelihood that the action in question was adverse to the employee, since the alternative to the employee is in many cases, no job at all. This is not the situation that is before the Court.

workers precluded summary judgment for defendant).

 With regard to the possible constructive discharge claim, the standard within the Second Circuit is an objective one, requiring an employee to demonstrate that a reasonable person in the employee's position would have felt compelled to resign. *Greenberg v. Hilton International Co.*, 870 F.2d 926, 936 (2d Cir.1989). Moreover, this determination is most appropriately made on the basis of testimony provided at trial. *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1420 (S.D.N.Y.1989). The Court concurs with the Magistrate's determination that the transfer may well have caused a reasonable person in Medwid's position to resign. Accordingly, since there are genuine issues of material fact with regard to the adverse nature of the Los Angeles transfer and whether this transfer could be considered a constructive discharge, summary judgment for the Secretary as to this claim is denied.[11]

### 2. *The One Thousand Dollar Bonus*

 Medwid argues that a one thousand dollar sustained work performance award was improperly awarded to another IRS inspector, Robert Murphy, for his work on a project. Medwid claims that he should have received a "high quality increase" for his work because the project would never have surfaced without his efforts, and that as a result, the government stood to receive a significant sum in lost revenue. On May 23, 1983, he filed an agency grievance in connection with his work on the project. Medwid's complaint was denied on the basis that it was excluded from agency grievance procedures.

The Secretary asserts that plaintiff is unable to establish a prima facie case with respect to this claim because he cannot establish that the complained of act raises an inference of age discrimination. The

Court agrees with the Magistrate that Medwid's claim fails as a matter of law, because Medwid cannot prove age-based animus with regard to the bonus. Denial of a bonus in favor of an individual Medwid's age or older cannot constitute age discrimination. *See Vaughn v. Mobil Oil Corp.*, 708 F.Supp. 595, 601 (S.D.N.Y.1989). At the time Inspector Murphy received the bonus, plaintiff was 51 years of age. Medwid acknowledged during his deposition that Murphy was his "contemporary" and was also in his fifties. Medwid dep. at 45. Therefore, the Secretary's motion for summary judgment on the bonus claim is granted.

### 3. *The Suspension Claim*

 Medwid alleges that a fourteen-day suspension imposed upon him was discriminatory. The Secretary argues that even assuming that plaintiff could establish a prima facie case, he cannot overcome defendant's articulation of legitimate, nondiscriminatory reasons for the suspension.

On September 24, 1982, Medwid was suspended for fourteen days after it was discovered that he possessed certain documents authored by Branch Chief Nagy and which were intended only for certain group supervisors. Medwid asserts that he should have been privy to the documents' contents because they contained false statements regarding his work performance, and represented another instance of harassment against him.

Medwid concedes that he lacked the proper authority to possess the documents and that he attempted to conceal the source of the documents in order to protect a co-worker's identity. Consequently, even assuming that Medwid can establish a prima facie case, the Secretary has met his burden by articulating two legitimate nondiscriminatory reasons for the suspension: Medwid's unauthorized possession of the

---

**11.** The Secretary sought summary judgment on these claims based solely on the contention that the assignments did not constitute adverse employment actions. Since the Secretary did not

challenge these claims based on a failure to demonstrate discriminatory motivation, that issue is not addressed here.

documents and his false and misleading statements.

Plaintiff's burden at trial would thus be to prove by a preponderance of the evidence that the reasons advanced are simply a pretext for discrimination. In the context of the motion before the Court, in order for plaintiff to avoid summary judgment he must present evidence which creates a genuine issue of material fact as to the defendant's proffered reasons or as to a discriminatory motive. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988). Medwid has wholly failed to present such evidence, and there is nothing in the record which would demonstrate that defendant's reasons for the suspension were pretextual. Accordingly, the Secretary's motion for summary judgment on the suspension claim is granted.

## CONCLUSION

For the foregoing reasons, the Secretary's motion for summary judgment is granted with respect to Medwid's internal counseling, one thousand dollar bonus and suspension claims, and denied with respect to all claims arising prior to August 31, 1982, the surveillance claims, the Buffalo work detail and the Los Angeles transfer. Medwid's cross-motion for summary judgment is denied. The parties are directed to complete any remaining discovery on or before December 27, 1990 and to file a joint pretrial order on or before January 24, 1991.

It is so ordered.