**Professor Diane SANK, Plaintiff,**

v.

**THE CITY UNIVERSITY OF NEW YORK, Joseph Murphy, et al., Defendants**

No. 94 CIV. 0253(RWS).

United States District Court, S.D. New York.

Aug. 2, 2002.

Diane Sank, Englewood Cliffs, NJ, Plaintiff Pro Se.

Eliot Spitzer, Attorney General of the State of New York by Steven L. Banks, Assistant Attorney General, New York City, for Defendants.

## OPINION

SWEET, District Judge.

Defendants City University of New York ("CUNY") and City College of the City of New York ("CCNY") (collectively the "Defendants") have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the remaining claims in the complaint of plaintiff *pro se* Diane Sank ("Sank"). Sank's only remaining claims are filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. §§ 2000e *et seq.,* alleging that defendants removed her as chairperson of the Anthropology Department based on her gender, race, religion, and age, and retaliated against her after she filed a complaint of discrimination with the New York City Human Rights Commission.

For the following reasons, the Defendants' motion is granted in part and denied in part.

### Facts

The parties, proceedings, and facts have been described in greater detail in *Sank v. CUNY,* 2002 WL 523282 (April 5, 2002) (the "April 5 Opinion"), familiarity with which is presumed. Because Sank has not submitted a Rule 56.1 statement, the facts that were presented in the April 5 Opinion remain the same.

### Prior Proceedings

Sank filed her complaint in this Court on January 18, 1994, and an amended complaint (the "Complaint") was filed on May 27, 1994. In a series of opinions, the complaint has been whittled down to the remaining Title VII claims. *See Sank v. CUNY,* No. 94 Civ. 0253, 1995 WL 314696 (S.D.N.Y. May 24, 1995) (pursuant to Fed. R.Civ.P. 12(b)(6) dismissing (1) plaintiff's claims of discrimination based on age, religion, and disability, (2) plaintiff's Title VII claims against individual defendant Beverly Sowande and the CUNY Board of Trustees, and (3) all of plaintiff's claims under 42 U.S.C. § 1983); *Sank v. CUNY,* 1997 WL 362150 (S.D.N.Y. June 26, 1997) (dismissing Title VII claims against all other individual defendants).

Defendants filed the instant motion on April 13, 2001 to dismiss all remaining claims. These claims were: (1) Title VII claims against CUNY and CCNY for gender and race discrimination and retaliation; (2) a state FOIL claim against defendant Sowande; and (3) a state contract law claim against CUNY and CCNY. In response, Sank on November 26, 2001 filed a declaration in support of a motion under Rule 56(f) to deny or postpone summary judgment. The motion was deemed fully submitted on February 27, 2002.

In the April 5 Opinion, the court dismissed Sank's state FOIL and contract law claims. The issue of whether summary judgment should be granted on the Title VII claims was not reached, however, because it was determined that Sank had shown that she needed more discovery before responding to the motion.

A hearing was held on April 10, 2002, at which the Defendants emphatically stated that they had provided all the discovery required of them that they were capable of providing. An order issued on April 12, 2002, stating that Sank would be required to respond to CUNY's summary judgment motion if the Defendants provided a sworn affidavit affirming that they had duly complied with the required discovery. *Sank v. CUNY,* 2002 WL 548744 (S.D.N.Y. April 12, 2002).

The Defendants supplied the affidavit on May 13, 2002, thus reopening the portion of this motion seeking summary judgment on Sank's Title VII claims. Sank then submitted her opposition papers on June 12, 2002, and the motion was considered fully submitted at that time.

## Discussion

### I. *Standard of Review*

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir.2002).

"The salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Nicastro v. Runyon*, 60 F.Supp.2d 181, 183 (S.D.N.Y.1999) (*citing Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988)). Greater caution must be exercised, however, in granting summary judgment in employment discrimination cases where the employer's intent is genuinely in issue. *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). This is so because "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the [action complained of] is for a reason expressly forbidden by law." *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (internal quotation marks and citation omitted; brackets in the original). But even where an employer's intent is at issue, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

■ In addressing the present motion, the Court is mindful that the plaintiff is proceeding *pro se* and that her submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers ....' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (*quoting Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of lack of legal training. *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir.1983).

Indeed, district courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth*, 710 F.2d at 95 (quotations omitted).

### II. *Title VII*

As an initial matter, Sank's response to the Defendants' motion for summary judgment consists entirely of her argument for why she continues to need more discovery more than eight years after her complaint was originally filed. This argument was

finally rejected in the April 12 Opinion. Sank's motion for reconsideration of that opinion has also been rejected. As a result, this Court will reach the merits in this opinion.

## A. *Discrimination Claim*

Claims of discrimination under Title VII are analyzed under the three-part test announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class and (2) she suffered an adverse employment action (3) under circumstances that give rise to an inference of unlawful discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000). Second, if the plaintiff successfully establishes a *prima facie* case of discrimination, the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Weinstock,* 224 F.3d at 42. Finally, if the defendant articulates a non-discriminatory reason, the plaintiff must come forward with evidence that the defendant's articulated non-discriminatory reason is a mere pretext for actual discrimination. *Weinstock,* 224 F.3d at 42 ("The plaintiff must 'produce not simply some evidence but sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the [defendant] were false and that more likely than not [discrimination] was the real reason for the'" employment action (quotations and citations omitted; brackets in original)).

Whether a judgment as a matter of law is appropriate depends upon a number of factors, including the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### 1. *Prima Facie Case*

■ The Defendants argue that Sank cannot establish that her removal as chairperson of the Anthropology Department (the "Department") occurred under circumstances that would give rise to an inference of unlawful discrimination.

However, several circumstances do at the very least present an disputed issue of fact as to whether discrimination may be inferred. CCNY President Bernard W. Harleston ("Harleston") had threatened to shut down the Department because it contained no black faculty. Second, Harleston then appointed a black male as interim chairman in Sank's place, even though two white female candidates had also been vetted. Further, the circumstances of that appointment were suspect: Harleston did not ask Sank to resign quietly, as she claims was the usual practice,[1] but instead publicly asked her to step down. Further, he did so without the advice and approval of the university's Ombudsman.

Reading Sank's complaint in the light most favorable to her, she has established a material issue of fact as to whether an inference of discrimination exists.

---

1. Although the CUNY By-laws at that time permitted CCNY's president to remove a departmental chairperson "as the interests of the college may require" after conferring with members of the department, Sank claims that this incident was the first time in CCNY's history that a department chair was removed, rather than quietly asked to resign.

## B. Defendants' Non–Discriminatory Reason

■ The Defendants state that Sank was removed because she had lost the support of her fellow faculty members and because, as the outside anthropologists noted, there was a need for outside guidance. This is sufficient to state a nondiscriminatory reason.

## C. Pretext

■ Sank argues that Harleston had a discriminatory agenda in that he wanted to make CCNY a black male-dominated institution.

The Defendants, however, point to the fact that Sank's removal was endorsed by four of the six faculty members of the Department and was recommended by impartial outside evaluators. They also note that the Department's eventual decision to elect a white female chairperson after an exhaustive search is indicative of the non-existence of any discriminatory agenda.

However, the facts detailed above call into doubt the excuses given by the Defendants. First, the Defendants' reliance on the fact that Sank's removal was endorsed by faculty members is drawn into doubt by the very public stance of the faculty members' boss, Harleston, that they might lose their Department (and thus potentially their jobs) if more black faculty were not hired in the Department. As a result, their vote might have been influenced by the alleged racist and sexist animus that Sank attributes to Harleston. Further, the fact that a white female was eventually selected also is drawn into question by the fact that the selection took time. Sank's immediate successor was a black male. Then, a white male was elected under dubious circumstances for the next term. In addition, Sank had already filed her complaint by the time the white chairwoman was elected. This circumstance alone presents an issue of disputed fact as to whether the Defendants specifically sought out a white chairwoman to rebut Sank's complaint.

As a result, Sank has presented a genuine issue of material fact, and the Defendant's motion to dismiss the Title VII discrimination claim is denied.

## III. Retaliation Claim

A Title VII retaliation claim is also analyzed under the rubric of *McDonnell Douglas. Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995). First, in order to make out a *prima facie* case of retaliation, a plaintiff must establish (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768–69 (2d Cir.1998). Second, if the plaintiff establishes a *prima facie* case of retaliation, the defendant may articulate a legitimate, non-retaliatory reason for its actions. *Id.* at 768. Finally, if the defendant does so, the plaintiff must prove that the proffered reason is merely a pretext for retaliation. *Id.* at 769.

The Defendants here challenge whether Sank has made her *prima facie* case. They argue that Sank did not suffer an adverse employment action and that the alleged adverse actions were not causally connected to the filing of her complaint with the Commission.

Adverse employment actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) (citations omitted). The Second Circuit has also held that lesser actions may qualify, but has not provided a bright-line rule with regard to such lesser actions. *Id.* In *Bernheim v. Litt,* 79 F.3d 318, 327 (2d Cir.1996), the Second Circuit

has found in the case of plaintiff teacher such lesser actions to include negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process the teacher's insurance forms, transfer from library to classroom teaching, and assignment to a classroom on the fifth floor which aggravated the teacher's disabilities. *Id.* However, "[b]ecause there are no bright line rules as to which employment actions meet the threshold for 'adverse,' courts must make this determination on a case-by-case basis." *Wilburn v. Fleet Fin. Group, Inc.,* 170 F.Supp.2d 219, 237 (D.Conn.2001) (*quoting Richardson v. New York State Dep't of Correctional Service,* 180 F.3d 426, 446 (2d Cir.1999)).

To sustain an adverse employment action, a plaintiff must "endure[ ] a 'materially adverse change' in the terms and conditions of employment.'" *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (*quoting Richardson,* 180 F.3d at 446). In order for the action to be " 'materially adverse,' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (*quoting Crady v. Liberty Nat'l Bank and Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir.1993)). A " 'material adverse change' is one that 'has an attendant negative result, a deprivation of a position or an opportunity.'" *Campbell v. Grayline Air Shuttle, Inc.,* 930 F.Supp. 794, 802 (E.D.N.Y.1996) (*citing Medwid v. Baker,* 752 F.Supp. 125, 136–37 (S.D.N.Y.1990)). While adverse employment actions extend beyond readily quantifiable losses, "not everything that makes an employee unhappy is an actionable adverse action." *Phillips v. Bowen,* 278 F.3d 103, 117 (2d Cir.2002) (stating that employee's "trivial complaints about an unpleasant working environment" do not constitute adverse employment actions).

In her complaint, Sank alleges that she experienced two adverse employment actions: (1) alleged threats by her colleagues in the Department to take away her research computer; and (2) the dismantling of her research laboratory.

As the Defendants point out, the research computer was never, in fact, taken. Sank was not thereby deprived of a position or an opportunity. Further, she has failed to allege how the threats rose to a "sufficiently severe" level that could reasonably be claimed to constitute a change in Sank's conditions and terms of employment. *Richardson,* 180 F.3d at 446 (unchecked retaliatory co-worker harassment may constitute adverse employment action if sufficiently severe); *Gallo v. Herman,* No. 97 Civ. 8359, 1999 WL 249709, at *3 (S.D.N.Y. April 28, 1999) (derision from co-workers insufficient to establish adverse employment action in absence of specific facts showing nature of derision or how it rises to a materially adverse change), *aff'd* 205 F.3d 1322 (2d Cir.2000). Sank's retaliation claim is dismissed with regard to this allegation.

With regard to the taking of her laboratory, the Defendants note that Sank could have been assigned a new laboratory if she had wanted one and assisted in its restoration. Yet Sank refused to participate in the process of readying a new room that had been assigned as her laboratory as a result of campus-wide renovations. Therefore, the Defendants conclude that Sank cannot complain that her laboratory space was "taken" or that she was deprived of a position or opportunity.

Sank can complain, however, that her laboratory space was relocated without her oversight and without her knowledge. While the plan to relocate her laboratory was announced on July 13, 1989, and was scheduled to take place on July 23 and 24, the Department Chairman did not inform

Sank of this fact until a week after the announcement, by letter dated July 20, 1989. July 20 was a Thursday, and the move was set to begin on a Sunday. Therefore, the letter would have had to reach Sank by Saturday in order for her to be aware of the relocation. Given the small likelihood of Sank receiving the notice in time, the Department Chairman's actions virtually guaranteed that Sank's laboratory—which included personal effects and items Sank considered valuable and irreplaceable—would be moved without her presence and knowledge. This invasion of Sank's personal and professional space is an adverse employment action.

 The Defendants also argue that Sank has failed to show a causal connection between the relocation and her complaint. The Defendants are correct that the actual decision to move the laboratory was made by the architect in charge of the campus-wide renovations, Anthony Rodriguez ("Rodriguez"). Further, Rodriguez claims that he did not know Sank and was unaware of her complaint. As noted above, however, the adverse action was the failure to inform Sank of the move in time for her to oversee it. The person directly responsible for that was the Department Chairman, who was well aware of Sank's complaint. Given the timing, the situation raises a material issue of fact as to whether there was a causal connection between the lack of notice and Sank's filing of her complaint. Therefore, the Defendants' motion to dismiss Sank's retaliation claim on these grounds is denied.

### Conclusion

The Defendants' motion is denied except as to Sank's Title VII retaliation claim based on the threats to take away her computer, which is dismissed.

The parties are directed to attend a pretrial conference on September 10, 2002, at which time a trial date will be set.

It is so ordered.