■ CHARLES ADAMS IMPORTERS, LTD., et al., Respondents, v JEANNE M. DANA, Appellant.—Judgment, Supreme Court, New York County (Louis I. Kaplan, J.), entered May 10, 1985, which, after an assessment, awarded plaintiff $34,500, plus interest, costs and disbursements, unanimously modified, on the law and the facts, without costs, only to the extent of reducing the award to $9,160, representing $7,660 lost profits and $1,500 expenses, and otherwise affirmed.

The action was commenced to recover for defendant's breach of an agreement to purchase certain Oriental figurines and art for $25,000. The agreement was entered into April 30, 1982 at plaintiff Charles Adams' retail store in the lobby of the Waldorf Astoria Hotel, at which time defendant made a down payment of $3,000 and took possession of a vase worth $1,100, the remaining items to be delivered after the balance had been paid. The $22,000 balance was to be paid from a time deposit account upon Mr. Adams' presenting defendant's letter of introduction to the London branch of the Canadian Imperial Bank of Commerce. Adams agreed to that procedure since he was leaving for Europe, where he was to travel to Spain, Italy and Holland.

Adams diverted his trip from Italy to London for the sole purpose of receiving payment from defendant's bank. The day after his arrival, he presented the letter of introduction but claims he was treated in an abusive and discourteous manner by the bank's representative over the succeeding four-day period. The first day, he was forced to wait for three hours while the bank attempted to communicate with defendant and, after another two-hour wait, was told to come back the next day. His attempts to telephone her from his hotel were

unsuccessful and, the next day, he was forced to wait another four hours, after which he was told that there were no funds in the account. On his return to his hotel, he found that his clothes had been packed and placed on the street. The third day, he waited another three hours while the bank checked as to the availability of other funds and, after a fourth day of stalling and further abuse and religious slurs, he flew to Amsterdam, two days late, which he contends led to an additional business loss. The balance owed was never paid.

After plaintiff was granted summary judgment on liability, the matter proceeded to an assessment, at which plaintiff admitted that his profit margin was 40%, or $10,000. Following inquest, plaintiff was awarded $22,000 on the first and second causes of action, representing the difference between the contract price and the $3,000 down payment; $2,500 for traveling and related expenses in London; and $10,000 punitive damages for the willful, humiliating behavior which the court found had caused him to suffer mental and physical distress.

The only issue on the appeal is the propriety of the damage award. Contrary to the trial court's finding, plaintiff was not entitled to $22,000 for breach of contract since it is undisputed that, other than the $1,100 vase, the goods were never delivered. This would unjustly enrich plaintiff at defendant's expense. Under the circumstances, the appropriate measure of damages is plaintiff's lost profit, concededly 40% of the contract price—the sum of $7,660, calculated by applying 40% to the difference between the contract price and the value of the goods which had not been delivered ($23,900), less $1,900, the difference between the $3,000 down payment which defendant paid and the value of the goods she received.

There is no basis on this record for an award of punitive damages. There was no proof of fraud at the time the agreement was entered into. Moreover, taking into account that the action is for breach of contract, the law is clear that exemplary damages may not be recovered where there is only a private wrong and no public right is involved. In actions for breach of contract, it has been repeatedly held that, in order to support a punitive damage award, there must be fraudulent, criminal or dishonest acts upon the general public, involving a high degree of moral culpability (see, *Walker v Sheldon,* 10 NY2d 401, 405; *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354; *Samovar of Russia Jewelry Antique Corp. v Generali Gen. Ins. Co.,* 102 AD2d 279, 283-284; *Gale v Kessler,* 93 AD2d 744; *Merrick v Four Star Stage Light.,* 60 AD2d 806). As

we observed in *Samovar* (at p 284), there must be "a fraudulent and deceitful scheme in dealing with the general public to imply a criminal indifference to civil obligations."

The $10,000 award may not be sustained as compensatory damages for the intentional infliction of emotional and physical distress. Within the past year, the Court of Appeals took cognizance of the underlying nature of the tort of the intentional infliction of emotional distress as predicating liability upon "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society *(Fischer v Maloney,* 43 NY2d 553, 557; *see also, Murphy v American Home Prods. Corp.,* 58 NY2d 293, 303)." *(Freihofer v Hearst Corp.,* 65 NY2d 135, 143.)

As applied here, even assuming that the conduct by the bank's representative in London satisfied the standard of "extreme and outrageous conduct", intentionally or recklessly causing severe emotional distress (Restatement [Second] of Torts § 46 [1]), the record is barren of any proof to reflect that defendant either instructed, authorized or ratified the actions *(cf. Walker v Lord & Taylor,* 236 App Div 111, 114). Thus, the issue is not the propriety of the actions by the bank's employee, but defendant's responsibility therefor. There was no proof adduced to impose upon defendant liability for the abuse and discourtesy experienced during plaintiff's four-day ordeal in London. While she did fail to advise plaintiff, before he diverted his trip to London, that she had instructed the bank not to make payment, this hardly rises to the level of an intentional tort, especially on the present record, which does not include any medical proof to substantiate plaintiff's conclusory claims.

However, we do not find the record sufficient to support the $2,500 award for reasonable expenses incurred in traveling to London and remaining there during the period of time involved. Although the only bills offered in evidence were plaintiff's hotel charge and restaurant bills, it is plain that the side trip, which diverted plaintiff from his original itinerary, did involve additional expense and airfare, as plaintiff testified to at trial. The undisputed proof was that plaintiff did not intend to travel to London and he went there solely to collect the balance owed from defendant's bank, which resulted in plaintiff incurring additional expense. Accordingly, we reduce the expense award to $1,500, which we find to be fair and equitable under all the circumstances. Concur—Sandler, J. P., Carro, Asch, Milonas and Kassal, JJ.