RICHARD L., as Father and Natural Guardian of ELISE L., an Infant, Appellant, v RICHARD ARMON, Respondent, et al., Defendant.

Second Department, January 17, 1989

APPEARANCES OF COUNSEL

*Melvin N. Borowka* for appellant.

*Capetola & Doddato (Patricia A. Harrington* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

On October 15, 1986, the defendant Richard Armon appeared in the County Court, Nassau County, and pleaded guilty to the crime of sexual abuse in the second degree (Penal Law § 130.60 [2]), a class A misdemeanor. He was subsequently sentenced to probation for a term of three years. The plaintiff, the father and natural guardian of an infant who was the victim of the crime, now claims, on her behalf, that as a result of the admissions made during his plea allocution Armon should be precluded from contesting his civil liability based upon the tort of intentional infliction of emotional distress. The sole question presented then is whether application of the doctrine of issue preclusion, also known as collateral estoppel, warrants the granting of partial summary judgment against Armon upon this theory of liability. We agree with the Justice who presided in the Supreme Court, and we hold that it does not.

"The elements necessary in all cases for issue preclusion are well known. It is required that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding" *(Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, 276, citing *Schwartz v Public Adm'r,* 24 NY2d 65, 71; *Ryan v New York Tel. Co.,* 62 NY2d 494, 500-502). The doctrine of issue preclusion provides that "as to the parties in a litigation and those in privity with them, a judgment on the merits by a court of competent jurisdiction is conclusive of the issues of fact and questions of law necessarily decided therein in any subsequent action" *(Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485, citing *Matter of Shea,* 309 NY 605, 616). "What is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding" *(Ryan v New York Tel. Co., supra,* at 500; *see also, Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 17-18). Thus, the defendant Richard Armon in the present civil action will be precluded from litigating only those issues which are identical to ones necessarily resolved by virtue of the prior judgment convicting him, upon his plea of guilty, of sexual abuse in the second degree *(see, Merchants Mut. Ins. Co. v Arzillo,* 98 AD2d 495, 504; *Brennan v Mead,* 81 AD2d 821, *affd* 54 NY2d 811).

The only issues of fact which were necessarily decided by virtue of the prior judgment of conviction are (1) that the defendant Richard Armon touched the "sexual or other intimate parts [of the infant] * * * for the purpose of gratifying sexual desire of either party" (Penal Law §§ 130.60, 130.00 [3]) and (2) that the infant was, at that time, less than 14 years old (Penal Law § 130.60 [2]). The issues of fact which must be decided in the present case are (1) whether the defendant Armon engaged in conduct which went " 'beyond all possible bounds of decency' " *(Fischer v Maloney,* 43 NY2d 553, 557, quoting from Restatement [Second] of Torts § 46, comment d; *see also, Murphy v American Home Prods. Corp.,* 58 NY2d 293, 303), (2) whether he intended to cause distress or knew that his conduct would result in emotional distress (Restatement [Second] of Torts § 46, comment i), (3) whether the infant, in fact, suffered *severe* emotional distress (Restatement [Second] of Torts § 46, comment j) and (4) whether Armon's conduct, in fact, caused the distress. These are the four elements of the tort of intentional infliction of emotional distress as defined in the Restatement (Second) of Torts § 46 (1), and as defined in the substantive law of most jurisdictions, including New York

*(see,* Annotation, *Torts—Intentional [Infliction of] Mental Distress,* 38 ALR4th 998). It is clear that these elements are completely different from the elements of sexual abuse in the second degree.

To begin with the most obvious factor, it is well settled that one of the elements of the tort of intentional infliction of emotional distress is that the victim be shown to have suffered *severe* psychological damage *(see, Nader v General Motors Corp.,* 25 NY2d 560, 569; *Kasachkoff v City of New York,* 107 AD2d 130, 137, *affd* 68 NY2d 654). This element must be established to make out liability and does not go merely to damages *(see,* Restatement [Second] of Torts § 46, comment j; *see also, Moniodis v Cook,* 64 Md App 1, 494 A2d 212, 219-220, *cert denied* 304 Md 631, 500 A2d 649; *Sale v Allstate Ins. Co.,* 126 Ill App 3d 905, 467 NE2d 1023, 1035; *Bridges v Winn-Dixie Atlanta,* 176 Ga App 227, 335 SE2d 445, 448; *Ludwick v This Minute of Carolina,* 283 SC 149, 321 SE2d 618, 621; *Rooney v National Super Markets,* 668 SW2d 649, 650 [Mo]; *Anthan v Professional Air Traffic Controllers Org.,* 672 F2d 706, 711 [8th Cir 1982]; *Moolenaar v Atlas Motor Inns,* 616 F2d 87, 90 [3d Cir 1980]; *see also,* 7A [part 2] Warren, New York Negligence—Damages, ch 10, § 3.04 [4]; Prosser and Keeton, Torts § 12, at 60 [5th ed]). Most courts, following the rule announced in the Restatement (Second) of Torts § 46, comment j, hold that an objective standard applies in determining whether the emotional distress suffered by the victim is sufficiently severe to warrant imposition of liability and state that, in order to give rise to liability, the distress inflicted must be "so severe that no reasonable man could be expected to endure it" (Restatement [Second] of Torts § 46, comment j; *see, e.g., Girard v Ball,* 125 Cal App 3d 772, 178 Cal Rptr 406; *see also,* Minzer, Damages in Tort Actions, § 6.12 [4], at 6-83—6-93). "[D]isputes over the severity of plaintiff's emotional distress are generally resolved by the jury" (7A [part 2] Warren, New York Negligence—Damages, ch 10, § 3.04 [4], at 490).

The evidence in the present record as to the criminal conviction which primarily consists of a transcript of the defendant Armon's plea allocution does not reveal that the infant suffered severe psychological injuries—or, for that matter, *any* injury, psychological or otherwise—as the result of his sexual contact with her. This is not surprising, since proof of such injury is totally unnecessary in order to sustain a conviction of sexual abuse in the second degree. There is no sound

basis, as a matter of law or as a matter of equity, to preclude the defendant Richard Armon from litigating this issue.

Further, the record is similarly devoid of evidence that Richard Armon, who admitted to having touched the intimate parts of the infant in order to gratify his own sexual desire, intended to cause distress. As noted above, a second element of the tort of intentional infliction of emotional distress is that the defendant be proved to have intended to cause emotional distress, or to have acted with conscious disregard of a substantial risk that such distress would result from his conduct *(see,* Restatement [Second] of Torts § 46, comment i; *Nader v General Motors Corp.,* 25 NY2d 560, 569, *supra; Adams Importers v Dana,* 121 AD2d 279, 281; *see also, Hearon v City of Chicago,* 157 Ill App 3d 633, 510 NE2d 1192, 1195; *Tommy's Elbow Room v Kavorkian,* 727 P2d 1038, 1044 [Alaska]; *Pierce v Penman,* 357 Pa Super 225, 515 A2d 948, 951, n 2, *lv denied* 515 Pa 608, 529 A2d 1082; *Singer v Wadman,* 595 F Supp 188, 298, *affd* 745 F2d 606, *cert denied* 470 US 1028; *Plocar v Dunkin' Donuts* 103 Ill App 3d 740, 431 NE2d 1175, 1179-1180; *Vicnire v Ford Motor Credit Co.,* 401 A2d 148 [Me]; *Vance v Vance,* 286 Md 490, 408 A2d 728, 736; *Gellert v Eastern Air Lines,* 370 So 2d 802, 808, *cert denied* 381 So 2d 766 [Fla]; *Briggs v Rosenthal,* 73 NC App 672, 327 SE2d 308, 312, *cert denied* 314 NC 114, 332 SE2d 479). "Intent is not established merely because an individual has suffered severe emotional distress as the proximate result of another's actions" (Minzer, Damages in Tort Actions, § 6.12 [1], at 6-45).

We recognize, of course, that the very nature of a defendant's act may lead a fact finder to infer that the act was done with intent *(see, e.g., Long v Beneficial Fin. Co.,* 39 AD2d 11; *Lane v Marine Midland Bank,* 112 Misc 2d 200, 203; *see also,* 7A [part 2] Warren, New York Negligence—Damages, ch 10, § 3.04 [1], at 465). As a practical matter, it is rare that a defendant will admit that his misconduct was intended to cause the victim to become distraught, or that he consciously disregarded a risk that distress would result. Certainly, the present record contains no such admission and this again is to be expected, since intent to cause distress is not an element of the crime to which the defendant Armon pleaded guilty. Whether to draw an inference that he intended to cause distress from the nature of his act alone is, of course, a determination to be made by the trier of fact.

Finally, there is the question of whether the defendant Richard Armon's conduct was so outrageous as to warrant the

court's determination of this issue as a matter of law. In the case of *Doe v Esposito* (114 AD2d 992), this court held that a defendant who was guilty of several acts of incestuous rape was, as matter of law, subject to civil liability for the intentional infliction of emotional distress. The plaintiff argues on appeal that the rule of the *Doe* case *(supra)* should be extended so as to apply to the present case involving the misdemeanor of sexual abuse.

The plaintiff's argument in this respect constitutes an invitation to this court to hold, in effect, that where a defendant in a civil action for damages admits under oath—in a plea allocution or (presumably) elsewhere—that he committed conduct considered by the *court* to be outrageous, then the inconvenience of submitting the issue of outrageousness to the *jury* may be dispensed with. Of course, the plaintiff offers no standard by which the courts are to distinguish between that sort of conduct which is so atrocious as to warrant the imposition of civil liability and the sort of conduct which, while offensive, is not so atrocious. While we might have no difficulty in agreeing in the particular case now before us that the defendant Richard Armon's conduct was truly beyond the bounds of decent society, we believe it far more appropriate to permit a jury to draw that conclusion.

It would constitute a significant intrusion into the province of the jury to hold, as the plaintiff urges, that in this case the defendant's conduct may be considered outrageous as a matter of law so as to establish a predicate for summary judgment. NY Constitution, article I, § 2 guarantees the defendant Richard Armon the right to a jury trial *(see, Martin v City of Albany,* 42 NY2d 13, 18-19; *Blum v Fresh Grown Preserve Corp.,* 292 NY 241). However tempted we might be to declare what seems to be obvious, that is, that his conduct exceeded all bounds of decency, we must defer to his constitutional right to have a jury of his peers, rather than Judges, decide this essentially factual question. While it is properly for the court to determine, as a question of law, whether the alleged misconduct of the defendant Richard Armon may reasonably be considered so extreme as to permit recovery, so as to permit submission of the issue to the jury in the first instance *(e.g., Novak v Rubin,* 129 AD2d 780, *lv denied* 133 AD2d 223; *Green v Leibowitz,* 118 AD2d 756; *Robinson v Paramount Pictures Corp.,* 122 AD2d 32), it is not for the court completely to usurp the function of the jury and to decide itself that his conduct is in fact so extreme. The holding of the court in *Doe*

*v Esposito (supra)* should therefore be confined to the particularly abhorrent facts of that case.

For the foregoing reasons, the order appealed from should be affirmed.

KUNZEMAN, EIBER and KOOPER, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.