**Marilyn CAMPBELL, Plaintiff,**

v.

**GRAYLINE AIR SHUTTLE, INC., and Edward Kuryluk, Defendants.**

No. CV–96–987.

United States District Court,
E.D. New York.

July 2, 1996.

Sandra E. Roper, Brooklyn, NY, for plaintiff.

Christopher A. D'Angelo, Nixon, Hargrave, Devans & Doyle, LLP, New York City, for defendants.

### MEMORANDUM AND ORDER

GLASSER, District Judge:

#### SUMMARY

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and 42 U.S.C. § 1981 for the defendants' "functional demotion" of the plaintiff and other allegedly discriminatory acts. The plaintiff also raises pendent state law claims for intentional infliction of emotional distress and interference with her employment contract. Before the Court is the defendants' motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons that follow, the motion is granted in part and denied in part.

#### FACTS

For purposes of this motion to dismiss, the following facts are accepted as true: The plaintiff, Marilyn Campbell ("Campbell"), who is black, began working for Giraldo Limousine Services ("Giraldo") on March 3, 1985. Compl. ¶ 10 & Exh. 1 ¶¶ 1–2. Campbell received good performance evaluations and held the position of manager of Ground Transport personnel. Id. at ¶ 11. In 1988, defendant GrayLine Air Shuttle, Inc. ("GrayLine") acquired Giraldo and continued Campbell in its employ. Id.

In 1990, GrayLine appointed defendant Edward Kuryluk ("Kuryluk") as Chief Executive Officer. Id. at ¶¶ 12. Campbell alleges that upon his appointment Kuryluk began a "campaign of the demotion of Black and Hispanics of color and their respective replacement with non-minorities." Id. at ¶ 13.

On May 22, 1992, Kuryluk informed Campbell that Sandy Alestre, who is Caucasian, would replace her as manager. Id. at Exh. 1 ¶¶ 3, 6. On May 14, 1993, Campbell filed a complaint of racial discrimination against GrayLine with the New York State Division of Human Rights (the "SDHR") in which she described Alestre's appointment as a "functional demotion." Id. at ¶ 8 & Exh. 1.

Campbell alleges that on February 2, 1995, Kuryluk "arbitrarily, capriciously, discriminatorily, and in retaliation" decreased her hours of work "by 5 hours." Compl. ¶ 16. Campbell also alleges that "[i]n furtherance of defendants' discriminatory conduct against Ms. Campbell," the defendants denied her the necessary supplies, equipment, and space that she needed to perform her duties. Id. at ¶¶ 17–18.

The following are based on documents in plaintiff's possession or of which plaintiff had knowledge and on which plaintiff relied in bringing suit:

On August 28, 1995, the SDHR issued a determination that there was no probable cause to believe that GrayLine discriminated against Campbell. D'Angelo Aff. Exh.B. The SDHR's conclusion was based in part upon a finding that GrayLine had not reduced Campbell's salary in spite of her alleged demotion. Id.

Campbell sought review of the SDHR's determination from the Equal Employment

Opportunity Commission (the "EEOC"). On December 14, 1995, the EEOC affirmed the SDHR's determination and issued a right-to-sue letter pursuant to 42 U.S.C. § 2000e–5(f)(1).[1] Compl. Exh. 2.

On March 6, 1996, Campbell commenced this action, naming both GrayLine and Kuryluk as defendants. On May 1, 1996, the defendants filed this motion to dismiss. Oral argument was held on June 28, 1996.

### DISCUSSION

Campbell's claims are based upon three types of conduct by the defendants: (1) the May 22, 1992 demotion; (2) the withholding of supplies and work space; and (3) the February 2, 1995 reduction in her work hours. The causes of action in the Complaint arise under Title VII of the Civil Right Act of 1964; 42 U.S.C. § 1981; and state law. Since the elements for successful pleading of each claim vary, they are discussed separately.

### I. Motion to Dismiss Standards

■ A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

■ When deciding a motion to dismiss, the court must take as true all factual allegations in the complaint and construe them favorably to the plaintiff. *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). The

court may consider all papers and exhibits appended to the complaint as well as any matters of which judicial notice may be taken. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995).

### II. Title VII Claims

A person who has an employment grievance may seek redress under Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. § 2000e *et seq.* Title VII provides for detailed administrative remedies that must be exhausted before the statute's protections may be invoked in federal court.

### The Demotion Claim

The defendants argue that Campbell's Title VII claim for demotion is based on an untimely filed EEOC charge. Def.Br. at 7–9. This court agrees.

■ "As a condition precedent to bringing suit in a Title VII action, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory act and obtain a right-to-sue letter." *Julian v. New York City Transit Authority,* 857 F.Supp. 242, 249 (E.D.N.Y.1994), *aff'd,* 52 F.3d 312 (2d Cir. 1995); see 42 U.S.C. § 2000e–5(e)(1).[2]

■ In a state such as New York, which has a state agency through which a complainant can seek relief from discrimination, a charge initially filed with the state agency is deemed filed with the EEOC 60 days after the charge was received by the state agency or upon termination of processing by the state agency, whichever is earliest. 29 C.F.R. § 1601.13(b)(1); *Ford v. Bernard Fineson Development Center,* 81 F.3d 304,

---

**1.** That section provides in pertinent part:
 If a charge filed with the Commission ... is dismissed by the Commission ... *the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge* ... by the person claiming to be aggrieved.
 42 U.S.C. § 2000e–5(f)(1) (emphasis added). The notification to which this section refers is the "right-to-sue letter."

**2.** Section 2000e–5(e)(1) of 42 U.S.C. provides in pertinent part:

... [I]n the case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... [a] charge [with the EEOC] shall be filed on or behalf of the person aggrieved *within three hundred days after the alleged unlawful employment practice occurred,* or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier[.]
(emphasis added).

308 & n. 7 (2d Cir.1996) (deeming charge filed with EEOC on date of filing with New York SDHR).

■ The 300–day time period within which a complainant may file an EEOC charge begins to run when the plaintiff first receives notice of the employment decision at issue. *See Delaware State College v. Ricks,* 449 U.S. 250, 259, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980). In *Delaware State College,* college trustees notified a professor on June 26, 1974 that he did not receive tenure and that his employment would expire at the end of his contract on June 30, 1975. *Id.* at 252–54, 101 S.Ct. at 501–02. The Court held that the limitations period began on June 26, 1974, the day on which the professor received notice of the trustees' decision. *Id.* at 258, 101 S.Ct. at 504. *See also Smith v. United Parcel Service of America, Inc.,* 65 F.3d 266, 268 (2d Cir.1995) ("[T]he limitations period begins to run 'on the date when the employee receives a definite notice of the [employment action]' ").

■ Campbell's SDHR charge, filed on May 14, 1993, reads in pertinent part:

On May 22, 1992 I was informed by Edward Kuryluk (Caucasian), Chief Executive Officer, that Sandy Alestre (Caucasian) would become the new manager, effective May 27, 1992, thereby reducing my duties.... On May 26, 1992 I wrote a letter to Mr. Kuryluk, voicing my objections to this move.

Compl.Exh. 1 ¶¶ 3, 4.

Campbell's SDHR charge indicates that she first became aware of GrayLine's action on May 22, 1992. Id. The charge, filed 358 days later, was clearly filed after the statutory limitations period had expired and was therefore untimely. See 42 U.S.C. § 2000e–5(e)(1); *Delaware State College,* 449 U.S. at 259, 101 S.Ct. at 504–05.

"A Title VII claimant may file suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994). Therefore, the plaintiff's Title VII claim for demotion is dismissed.

## Other Title VII Claims

■ Campbell also contends that the defendants decreased her work hours and withheld necessary equipment and work space from her in violation of Title VII. The defendants argue that Campbell is barred from raising Title VII claims for these allegations because they are outside the scope of her EEOC charge, which was itself untimely. Def.Br. 9–12.

■ A district court only has jurisdiction to hear claims that are included in an EEOC charge or that are based on conduct "reasonably related" to that alleged in the EEOC charge. *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993). In *Butts,* the court described three types of situations where claims alleged in a civil action are deemed reasonably related to the EEOC charge: (1) "where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination' "; (2) where the claim alleges "retaliation by an employer against an employee for filing an EEOC charge"; and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402–03.

Campbell argues that this complaint falls into the first category. She contends that she was not represented by counsel when she filed the SDHR charge, and that "the EEOC did not do an investigation of the matter" but "merely relied upon the findings of the State Division of Human Rights, whose investigator seemed to have already had her mind made up and was evidently biased towards the defendants." Pl.Br. at 6.

■ These factors alone do not bring Campbell's additional claims within the scope of her original charge. "Judicial claims which serve to amplify, clarify or more clearly focus on earlier EEOC complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *McGuire v. United States Postal Service,* 749 F.Supp. 1275, 1287 (S.D.N.Y. 1990).

Other courts have declined to expand the scope of an underlying EEOC charge to encompass conduct such as that alleged for the first time here. In *Kent v. AVCO Corp.*, 815 F.Supp. 67 (D.Conn.1992), the plaintiff filed an EEOC charge for age discrimination. The plaintiff alleged that the defendants coerced him into early retirement by threatening to reduce his health and insurance benefits. He subsequently brought a federal court action based upon the EEOC charge but added additional claims for disparate compensation, failures to promote, and insufficient working accommodations and secretarial services. Although all of his claims were based upon a theory of age discrimination, the court dismissed the claims based upon conduct not alleged in the plaintiff's administrative complaint. *Id.* at 70 ("Without these allegations, the EEOC could not have been expected to, and did not, inquire into the alleged acts of discrimination.").

With respect to the scope of the EEOC charge, the facts in this case are indistinguishable from those in *Kent.* In her SDHR charge, Campbell alleged only a "functional demotion." She did not mention a decrease in her work hours or the denial of space or supplies. The EEOC did not, and could not, investigate those additional claims because Campbell never presented them to an administrative agency. Those claims are dismissed for Campbell's failure to exhaust administrative remedies. *See Butts,* 990 F.2d at 1401; *Kent,* 815 F.Supp. at 70.

### *Title VII Claims against Kuryluk*

 In addition to claims against Gray-Line, Campbell states Title VII claims against Kuryluk, the Chief Executive Officer of GrayLine in his individual capacity. Campbell bases her claims against Kuryluk upon the theory that he had "unfettered control and discretion over the duties, responsibilities, wages, hours and working conditions of Ms. Campbell" and argues that he was thus "properly named in the complaint as an employer within the meaning of Title VI." Pl.Br. at 7.

The Second Circuit recently held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995). "Title VII's remedial provisions ... lead us to conclude that Congress never intended to hold agents individually liable for violations of the Act." *Id.* at 1314. Therefore, Campbell's Title VII claims against Kuryluk are dismissed.

### *III. Section 1981 Claims*

Section 1981 of 42 U.S.C. ("Section 1981") guarantees to all persons within the jurisdiction of the United States the same rights under the law as are enjoyed by white persons. 42 U.S.C. § 1981.[3] In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court had written:

> Where conduct is covered by both § 1981 and Title VII, the detailed procedures of Title VII are rendered a dead letter, as the plaintiff is free to pursue a claim by bringing suit under § 1981 without resort to those statutory prerequisites.

*Id.* at 181, 109 S.Ct. at 2375.

However, the decision in *Patterson,* minimized the concern that this interpretation of Section 1981 would "frustrate the congressional objectives in Title VII" by holding that suits could only be brought under Section 1981 for racial discrimination in the *making* and *enforcement* of contracts. Thus, most conduct in the employment context was excluded from Section 1981's scope. The Court recognized that certain acts of employment discrimination, such as a refusal to hire based on race, would be actionable under both Title VII and Section 1981, but reasoned that "this is precisely where it would make sense for Congress to provide the overlap. At this stage of the employee-employer

---

**3.** Section 1981(a) of 42 U.S.C. provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

relation Title VII's mediation and conciliation procedures would be of minimal effect, for there is not yet a relation to salvage." *Id.* at 182, 109 S.Ct. at 2375.

■ Partially in response to *Patterson,*[4] Congress amended Section 1981 in 1991 to encompass racial discrimination in the *performance* of contracts as well. See 42 U.S.C. § 1981(b);[5] Pub.L. 102–166, Nov. 21, 1991, 105 Stat. 1071, Civil Rights Act of 1991 (the "Act"). Therefore, racial discrimination in the course of an employment relationship occurring after November 21, 1991 is actionable under Section 1981 as well. *See Butts,* 990 F.2d at 1404.

■ Although "not many cases have been decided interpreting the language of the amendment," *Humphrey v. Council of Jewish Federations,* 901 F.Supp. 703, 710 (S.D.N.Y.1995), the effect of the 1991 amendment is to increase the overlap between Section 1981 and Title VII. It follows that an employee may now bring an action against an employer under Section 1981 without exhausting Title VII's administrative procedures. *See Patterson* 491 U.S. at 181, 109 S.Ct. at 2375 ("Where conduct is covered by both § 1981 and Title VII, the detailed procedures of Title VII are rendered a dead letter"); *Butts,* 990 F.2d at 1404 ("Plaintiff's complaint alleging discrimination in the terms and conditions her her employment clearly would state a cause of action under the amended § 1981").

At least one case decided after the 1991 amendment has come to this conclusion. In *Brown v. City of New York,* 869 F.Supp. 158 (S.D.N.Y.1994), a plaintiff stated claims of racial discrimination under Title VII as well as Section 1981. The defendants moved to dismiss some of the Section 1981 claims, arguing that they were "neither included in the EEOC charge nor [we]re reasonably related to it." The court denied that portion of the defendants' motion, writing:

4. The 1991 Amendment stated that one of its purposes was "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Pub.L. 102–166, Sec. 3(4)

5. Section 1981(b) of 42 U.S.C. provides:

While a claim predicated on Title VII cannot succeed where a plaintiff initially fails to pursue federal administrative relief, Section 1981 "was designed to afford a federal remedy separate and distinct from any relief available under Title VII." . . . Accordingly, [the plaintiff] was not required to include his Section 1981 claims in his EEOC charges.

*Id.* at 170 (citation omitted); *see also Lewis v. Digital Equip. Corp.,* 1993 WL 498047 at *4–5 (S.D.N.Y. Dec. 1, 1993).

### Timeliness

■ A court should look to state statutes of limitations for § 1981 actions. *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660–62, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (1987); *Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.), *cert. denied,* 498 U.S. 869, 111 S.Ct. 186, 112 L.Ed.2d 149 (1990). The applicable statute of limitations in New York is three years. *Id.; Butts,* 990 F.2d, at 1412.

The Complaint was filed on March 3, 1996. The date given for Campbell's alleged demotion is May 22, 1992. Accordingly, Campbell's Section 1981 claim for her alleged demotion is dismissed as time-barred.

■ The defendants contend that the Section 1981 claims for withholding of equipment and work space should also be dismissed as untimely. Def.Br. at 13. The defendants argue that the withholding of supplies and work space are alleged to have occurred before or contemporaneously with Campbell's demotion.

The Complaint is vague as to when the alleged withholding of space and supplies occurred. It states:

In furtherance of defendants' discriminatory conduct against Ms. Campbell, defendants denied Ms. Campbell the necessary supplies and equipment that she needed to perform her duties.

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

That Ms. Campbell was forced to perform her work on public chairs at the area airports without any office, desk, telephone or supplies, although she had made many requests for an office area because she was operating under deplorable conditions.

That Ms. Campbell's non-minority replacement was immediately provided with an office and the proper supplies and equipment for the carrying out of her duties by the defendants.

Compl. ¶¶ 17–19.

Since this court must draw all inferences favorably to the plaintiff, *see LaBounty v. Adler*, 933 F.2d at 123, this court cannot hold, as a matter of law, that the claims based upon the withholding of supplies and space are time-barred. If timely, these claims may be actionable. *See Davis v. City University of New York*, 1996 WL 243256 at *6 (S.D.N.Y. May 9, 1996). In *Davis*, the plaintiff claimed that she was forced to share office space with other faculty members in an unsafe area of the school, whereas similarly situated white faculty were given their own offices in a safe area of the school. The court held the allegation sufficiently specific to withstand the defendant's motion to dismiss. *Id.* at *6.

This court briefly notes that the defendants have not briefed the legal sufficiency of the Section 1981 claims for withholding of space and supplies. Those claims are dismissed with leave to replead within 30 days the dates on which those acts occurred. *See Alcena v. Raine*, 692 F.Supp. 261, 270 (S.D.N.Y.1988).

### *"Materially Adverse Change"*

■ It is undisputed that the alleged February 2, 1995 reduction in Campbell's work hours is within Section 1981's statutory limitations period. The defendants argue, however, that such conduct is not actionable under Section 1981. Def.Br. at 14.

■ The elements of a properly pleaded Section 1981 claim are as follows: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *See Mian v. Donaldson,*

*Lufkin & Jenrette*, 7 F.3d 1085, 1087 (2d Cir.1993) (affirmed after remand), *cert denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995).

■ Courts have described the type of employment action that gives rise to a Section 1981 claim as a "materially adverse change in the terms and conditions of employment." *McKenney v. New York City Off–Track Betting Corp.*, 903 F.Supp. 619, 623 (S.D.N.Y.1995); *Davis v. City University of New York*, 1996 WL 243256 at *8 (S.D.N.Y. May 9, 1996). A "material adverse change" is one that "has an attendant negative result, a deprivation of a position or an opportunity." *Medwid v. Baker*, 752 F.Supp. 125, 136–37 (S.D.N.Y.1990).

In *Monica v. New York City Off–Track Betting Corp.*, 1995 WL 117879 at *4 (S.D.N.Y. Mar. 20, 1995), *aff'd*, 1996 WL 2061 (2d Cir. Jan. 3, 1996), the court set forth the following description of a "materially adverse" employment action:

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A material adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or other indices that might be unique to a particular situation.

(quoting *Crady v. Liberty National Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993)). In *Monica*, the court also noted some types of actions that courts had found to be "materially adverse," including:

an employer's moving an employee's office to an undesirable location, transferring an employee to an isolated corner of the workplace, and requiring an employee to relocate her personal files while forbidding her to use the firm's stationery and support services.

*Id.* (*quoting Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir.1987)).

Campbell's Section 1981 claim for a reduction in work hours alleges that Kuryluk "arbitrarily, capriciously, discriminatorily and *in*

*retaliation,* did decrease Ms. Campbell's hours of work by 5 hours." Compl. ¶ 16 (emphasis added). This court holds that a reduction in work hours may have "an attendant negative result" within the meaning of *Medwid* and *Monica.* Such an action may reduce an employee's net income from one job without providing an opportunity to earn the lost income elsewhere. Although it is not clear from the Complaint whether the decrease in work hours in fact reduced Campbell's income, this court must draw the inference in plaintiff's favor that such a result was possible. Moreover, if done *in retaliation* to Campbell's filing of an EEOC charge, the reduction in work hours may give rise to a claim under Title VII. *See Butts,* 990 F.2d at 1402. Therefore, Campbell's claim for a retaliatory reduction in work hours states a valid cause of action under Section 1981 as well. *See Philippeaux v. North Cent. Bronx Hosp.,* 871 F.Supp. 640, 654 (S.D.N.Y.1994) ("To the extent that plaintiff has stated a valid cause of action under Title VII, he has sufficiently alleged a violation of the substantive portion of Section 1981"). The defendants' motion to dismiss Campbell's Section 1981 claim based upon the reduction in her work hours is therefore denied.

### IV. Pendent State Law Claims

In addition to the federal claims, Campbell asserts state law claims for intentional infliction of emotional distress and tortious interference with her employment contract. The defendants argue that both claims are substantively infirm.

### Intentional Infliction of Emotional Distress

Paragraph 27 of the Complaint states in part:

> That as the sole result of the Defendants' discriminatory acts in violation of federal and state laws, Ms. Campbell has been caused to suffer mental anguish, emotional distress, loss of self-esteem, humiliation, [and] embarrassment caused by loss of rank[.]

The defendants argue that this claim must be dismissed as time-barred and for legal insufficiency. Def.Br. at 17.

■ Under New York law, the statute of limitations for commencing an action for intentional infliction of emotional distress is one year from the time at which the offensive conduct occurred. *See Janneh v. Regency Hotel, Binghamton,* 870 F.Supp. 37, 40 (N.D.N.Y.1994). The Complaint was filed on March 6, 1996. Therefore, Campbell's claim for intentional infliction of emotional distress is time-barred to the extent that it rests upon her May 22, 1992 demotion and the February 2, 1995 reduction in her work hours and must rest solely upon the alleged withholding of supplies and work space.

■ Under New York law, a plaintiff claiming intentional infliction of emotional distress must prove four elements:

> (1) conduct that goes beyond all possible bounds of decency; (2) intention to cause distress, or knowledge that defendant's conduct would result in emotional distress; (3) severe emotional distress; and (4) a causal link between the defendant's conduct and plaintiff's distress.

*See Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir. 1995) *(citing Richard L. v. Armon,* 144 A.D.2d 1, 536 N.Y.S.2d 1014, 1015 (2d Dep't 1989)).

■ The standard for stating a claim of intentional infliction of emotional distress is very high, requiring allegation of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985).

■ This court holds that, as a matter of law, Campbell's claim for intentional infliction of emotional distress falls far short of the stringent standard for intentional infliction of emotional distress claims. *See Gerzog v. London Fog,* 907 F.Supp. 590, 604 (E.D.N.Y.1995) ("In the rare instances when the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination, and more significantly, battery."); *Martin v. Citibank,* 762 F.2d 212, 220 (2d

Cir.1985). Allegations that an employer withheld supplies and work space, even if true, do not constitute the type of outrageous conduct required to state a claim of intentional infliction of emotional distress. That claim is therefore dismissed.

### Tortious Interference with Contract

 The defendants argue in part that Campbell's claim for tortious interference with her employment contract must be dismissed because Campbell had no contract with the defendants. Def.Br. at 22. Technically, this argument is flawed. While "New York has adopted the common law rule that 'an employment relationship is presumed to be at will' ... the relationship is still a contractual one." *Smith v. United Parcel Service of America, Inc.*, 65 F.3d 266, 269 (2nd Cir.1995) (Walker, J., concurring).

However, Campbell's claim for tortious interference with her employment contract fails nonetheless because, under New York law, a party cannot be held liable for interfering with its own contract. *See Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir.1996). Therefore, Campbell's claim for tortious interference with her employment contract is dismissed.

### CONCLUSION

For the reasons above, this court finds that the plaintiff's EEOC charge with respect to the Title VII claims was not timely filed; holds that the plaintiff's claims for reduction in work hours and withholding of supplies and work space are not reasonably related to the underlying EEOC charge; and holds that Kuryluk may not be held liable as a defendant in the Title VII action. The plaintiff's Title VII claims are hereby dismissed in their entirety. This court holds that the plaintiff's Section 1981 claim for her alleged demotion is time-barred and dismisses it accordingly. The plaintiff's Section 1981 claims for withholding of space and supplies are dismissed with leave to replead within 30 days. This court holds that the plaintiff's claim for a retaliatory reduction in work hours is encompassed by Section 1981 and denies the defendants' motion to dismiss that claim. The state law claims for intentional infliction of emotional distress and tortious interference with the plaintiff's employment contract are dismissed.

SO ORDERED.