Diane SILBERSTEIN, Plaintiff,

v.

ADVANCE MAGAZINE PUBLISHERS, INC., et al., Defendants.

No. 97 Civ. 7832(LAK).

United States District Court, S.D. New York.

Dec. 23, 1997.

Barry I. Slotnick, J. Lawrence Crocker, Karen A. Odom, Slotnick, Shapiro & Crocker, LLP, for plaintiff.

Terri M. Solomon, Richard L. Hartz, Littler Mendelson, P.C., for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an employment discrimination action brought under Title VII of the Civil Rights Act of 1964, as amended,[1] and the New York State and City Human Rights Laws.[2] Plaintiff, formerly senior vice president and publisher of *The New Yorker*, claims that she first was demoted and then fired by reason of her having become pregnant with a second child. Defendants move to dismiss the fifth and sixth claims for relief—which seek recovery on theories of intentional infliction of emotional distress and negligent supervision, respectively—on the ground that each fails to state a claim upon which relief may be granted.

*Intentional Infliction of Emotional Distress*

The fifth claim for relief alleges that "[t]he tortious conduct consisted of sexual discrimination in the form of comments that either disparaged or stereotyped plaintiff Silberstein because of sex and the condition of her being pregnant." (Cpt ¶ 46)

Recovery for intentional infliction of emotional distress is available under New York law only in narrowly defined circumstances. As the New York Court of Appeals recently has emphasized:

> "The tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress. The first element—outrageous conduct—serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." [3]

The Court underscored the exceptional nature of the conduct necessary to trigger possible liability on this theory by noting that every such case ever considered by the New York Court of Appeals "failed because the alleged conduct was not sufficiently outrageous." [4] And the issue whether the alleged conduct is sufficiently outrageous to permit submission to a jury is a question of law for the court.[5]

In a sense, of course, the conduct alleged, if it occurred, was "outrageous." The very statutes upon which plaintiff bases her principal claims demonstrate that our society has determined that discrimination on the basis of gender or condition of pregnancy, among other bases, is intolerable. That alone, however, is insufficient to lift plaintiff's case over the hurdle established by the New York Court of Appeals.[6] Plaintiff's claim is insufficient on two grounds, each independently sufficient to require its dismissal.

To begin with, the New York State Human Rights Law is a statute dealing comprehensively with the subject of employment dis-

---

1.  42 U.S.C. § 2000a *et seq.*

2.  N.Y.Exec L. § 290 *et seq.* (McKinney 1993); N.Y.C.Admin.C. Art. 8.

3.  *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993); *accord, Bender v. City of New York*, 78 F.3d 787, 789 (2d Cir.1996); *Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir.1995).

4.  *Id.* at 122, 596 N.Y.S.2d at 353, 612 N.E.2d at 702.

5.  *Richard L. v. Armon*, 144 A.D.2d 1, 6, 536 N.Y.S.2d 1014, 1017 (2d Dept.1989); Restatement (Second) of Torts § 46, *cmt. h* (1965).

6.  *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985) (rejecting claim of intentional infliction of emotional distress based on alleged racial discrimination).

crimination.[7] It creates remedies that are products of legislative balancing of the respective interests of employers and employees. Most significantly, while the Legislature elected to create a private cause of action for damages in favor of those injured by violations of the statute, the statute does not permit recovery of punitive damages.[8] As the statute permits recovery for mental anguish and emotional distress,[9] the singular effect of recognizing a cause of action for intentional infliction of emotional distress based on employment discrimination would be to extend liability for punitive damages where the Legislature has declined to do so. By inviting this step, plaintiff in substance asks that the Court override the Legislature simply on the basis of its personal abhorrence of behavior such as that alleged here. This would be entirely inappropriate.

This view draws support from the New York Court of Appeals' comment in *Fischer v. Maloney* that it is questionable "whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability ..."[10]—a comment that repeatedly has been construed to mean that such liability is precluded.[11] Whatever the force of the argument that there should be no liability for intentional infliction of emotional distress based on conduct falling within traditional bounds of common law—and therefore judicially created—torts, the case for precluding such liability based on conduct for which the Legislature has created carefully limited statutory remedies is compelling.

A second objection to plaintiff's claim is that the conduct alleged here is no more "outrageous" than that found insufficient in numerous other cases.[12] While the conduct alleged here, if it occurred, was reprehensible, this Court believes that the courts of New York, the judgment of which it is obliged to respect on this issue of state law, would find it an insufficient basis for liability.

In reaching these conclusions, the Court is very much aware of the Second Circuit's

7. N.Y.Exec.L. § 290 *et seq.* (McKinney 1993).

8. *E.g., Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1190–91 (2d Cir.1992); *Thoreson v. Penthouse Int'l, Ltd.*, 80 N.Y.2d 490, 498–99, 591 N.Y.S.2d 978, 981–82, 606 N.E.2d 1369, 1372–73 (1992).

9. *E.g., Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 221 (S.D.N.Y.1994); *Cullen v. Nassau Co. Civ. Serv. Comm.*, 53 N.Y.2d 492, 496, 442 N.Y.S.2d 470, 472, 425 N.E.2d 858, 859–60 (1981).

10. 43 N.Y.2d 553, 557–58, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978).

11. *E.g., Herlihy v. Met. Museum of Art*, 214 A.D.2d 250, 263, 633 N.Y.S.2d 106, 114 (1st Dept.1995); *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 784–85, 610 N.Y.S.2d 664, 665–66 (3d Dept.1994); *Sweeney v. Prisoners' Legal Serv.*, 146 A.D.2d 1, 7, 538 N.Y.S.2d 370, 374 (3d Dept.), *appeal dismissed*, 74 N.Y.2d 842, 546 N.Y.S.2d 558, 545 N.E.2d 872 (1989); *see Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir.1993) (declining to undermine at-will employment rule by recognizing claim for intentional infliction of emotional distress in employment termination context).

12. *E.g., Martin*, 762 F.2d at 220 (subjecting employee to polygraph test on the basis of race); *Levin v. McPhee*, 917 F.Supp. 230, 242 (S.D.N.Y. 1996) (publication of book arguably accusing plaintiff of murder), *aff'd without consideration of the point*, 119 F.3d 189 (2d Cir.1997); *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983) (firing employee and throwing belongings into street because of whistle blowing) (for full statement of facts, see trial court's opinion, 112 Misc.2d 507, 447 N.Y.S.2d 218); *Andrews v. Bruk*, 220 A.D.2d 376, 631 N.Y.S.2d 771 (2d Dept.1995) (use of hospital documents to allege extramarital affair); *Herlihy v. Met. Museum of Art*, 214 A.D.2d 250, 262–63, 633 N.Y.S.2d 106, 113–14 (1st Dept.1995) (false accusation of making anti-Semitic slurs); *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 785, 610 N.Y.S.2d 664, 666 (3d Dept.1994) (circulating defamatory statement to press and business associates); *Krawtchuk v. Banco do Brasil, S.A.*, 183 A.D.2d 484, 583 N.Y.S.2d 403, 404 (1st Dept.1992) (accusation of theft and extortion); *Malamood v. Kiamesha Concord, Inc.*, 182 A.D.2d 359, 359–60, 582 N.Y.S.2d 118, 119–20 (1st Dept.1992) (employee fired because he had cancer); *Owen v. Leventritt*, 174 A.D.2d 471, 472, 571 N.Y.S.2d 25 (1st Dept.) (death threat), *leave to appeal denied*, 79 N.Y.2d 751, 579 N.Y.S.2d 651, 587 N.E.2d 289 (1991); *Doe v. Am. Broadcasting Cos.*, 152 A.D.2d 482, 483, 543 N.Y.S.2d 455 (1st Dept.) (broadcasting faces and voices of rape victims in breach of promise to disguise identities), *appeal dismissed*, 74 N.Y.2d 945, 550 N.Y.S.2d 278, 549 N.E.2d 480 (1989).

recent decision in *Bender v. City of New York*,[13] where it expressed some uncertainty as to the stringency of the New York standard of outrageousness and the continuing vitality of *Fischer*'s suggestion that there can be no liability for intentional infliction of emotional distress based on conduct covered by other tort doctrines. But it is important to recognize the context in which the Circuit made its comments and the quite different position in which this Court finds itself.

Critics of the diversity jurisdiction often have complained that it places federal judges in the position of a "ventriloquist's dummy to the [state] courts"[14] when state law is clear and otherwise requires them to attempt to predict state law by "exhaustively dissect[ing] each piece of evidence thought to cast light on what the highest state court would ultimately decide."[15] This difficulty largely has been eliminated for the Second Circuit with respect to New York law by its ability to certify questions of state law to New York's highest court.[16] And it was in the context of considering whether New York law was sufficiently unclear to warrant such a certification that the *Bender* panel made its comments.[17] This Court, on the other hand, cannot certify the issue to the state courts. It is obliged to make its own best judgment as to the course the New York Court of Appeals would take if presented with this case, and it must do so whether state law is clear or murky. In other words, acknowledging the points noted in *Bender*, this Court nevertheless must do its best to resolve any uncertainties.

This Court is persuaded that the New York Court of Appeals would reach the result outlined above were this case presented to it. Although the Circuit quite correctly pointed out in *Bender* that a handful of New York cases have sustained intentional infliction complaints based on conduct arguably less outrageous than the bulk of the New York decisions,[18] two of the three cases it cited date back to the 1960's—long before the bulk of the cases upon which this Court relies—and all antedate the New York Court of Appeals' recent and pointed reminder that it never has sustained a claim for intentional infliction of emotional distress. And while the authority on the issue of the availability of intentional infliction claims based on conduct falling within the boundaries of traditional torts is perhaps less preponderantly in favor of the point made in *Fischer*, that is not dispositive here. Whatever the New York courts may do on that issue, it seems to this Court extraordinarily unlikely that they would allow liability for employment discrimination on the intentional infliction theory in the face of the Legislature's enactment of a more limited remedy.

Accordingly, this Court concludes that the courts of New York would not sustain the fifth claim for relief as legally sufficient.

*The Negligent Supervision Claim*

■ Plaintiff's sixth cause of action alleges that defendants Advance Magazine Publishers, Inc., the parent company of *The New Yorker*, and S.I. Newhouse, Jr. are liable to her on the theory that they were negligent in their supervision of her immediate superior, who is said to have been directly responsible for the alleged discrimination. The claim fails for two independent reasons.

■ First, "[t]he right to [workers'] compensation or benefits . . . shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ."[19] In consequence, an employee may not sue his or

**13.** 78 F.3d 787 (2d Cir.1996). It would have been helpful if the parties had cited this case given its clear relevance to the issues raised by this motion.

**14.** *Richardson v. CIR*, 126 F.2d 562, 567 (2d Cir.1942).

**15.** HENRY J. FRIENDLY, FEDERAL JURISDICTION: A GENERAL VIEW 142 (1973).

**16.** 2D CIR R. § 0.27; Rules of the New York Court of Appeals § 500.17 (McKinney's 1997 Rules of Court).

**17.** The Circuit ultimately resolved the case on other grounds and thus did not ultimately decide any of these matters.

**18.** *Bender*, 78 F.3d at 791.

**19.** N.Y.WORK COMP.L. § 29, subd. 6 (McKinney 1993).

her employer or co-employee for injury allegedly caused by negligent supervision.[20] Plaintiff's contention that her claim survives because the wrongful termination for which she seeks recovery is not "injury" under the statute [21] is unsupported by any authority and contrary to common sense. She doubtless seeks recovery for lost wages and emotional injury of exactly the same character as similar elements of recovery sought by those hurt in industrial accidents.

Second, in order to prevail on a claim of negligent supervision, the plaintiff must show that the employer knew or should have known of the propensity of the errant employee to engage in the sort of behavior that produced the alleged harm.[22] There are no such allegations here.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss the fifth and sixth causes of action on the ground that they fail to state a claim upon which relief may be granted is granted in all respects.

SO ORDERED.

---

**20.** *Catrone v. Cables & Chips, Inc.*, No. 96 Civ. 2149(LBS), 1997 WL 164283, at *2 (S.D.N.Y. Apr.8, 1997); *Meletiche v. Holiday Inn Worldwide, Inc.*, No. 95 Civ. 6666(BSJ), 1996 WL 239893, at *1 (S.D.N.Y. May 8, 1996); *Persaud v. S. Axelrod Co.*, No. 95 Civ. 7849(RPP), 1996 WL 11197, at *5 (S.D.N.Y. Jan.10, 1996); *see also Martin*, 762 F.2d at 220 n. 7 (exclusive remedy for claim of discriminatory application of polygraph "would appear to be under the New York workers' compensation statute"); *Chrzanowski v. Lichtman*, 884 F.Supp. 751, 755–56 (W.D.N.Y. 1995) (claim of negligent hiring causing alleged sexual harassment barred); *Bradley v. Cons. Edison Co. of N.Y., Inc.*, 657 F.Supp. 197, 205 (S.D.N.Y.1987) (claim for employer negligence in

failing to prevent race and sex discrimination barred).

**21.** Pl.Mem. 4.

**22.** *Daniels v. Loizzo*, 174 F.R.D. 295, 299 (S.D.N.Y.1997); *Perry v. Burger King Corp.*, 924 F.Supp. 548, 552 (S.D.N.Y.1996); *Kirkman v. Astoria Gen. Hosp.*, 204 A.D.2d 401, 403, 611 N.Y.S.2d 615, 616 (2d Dept.1994), *leave to appeal denied*, 84 N.Y.2d 811, 622 N.Y.S.2d 913, 647 N.E.2d 119 (1994); *Mary KK v. Jack LL*, 203 A.D.2d 840, 611 N.Y.S.2d 347, 349 (3d Dept. 1994).